## JOHN C. KENDRICK v. THE STATE.

1. CRIMINAL LAW. *Homicide. Justification. Instructions.*

   In the trial of an indictment for homicide, it is not error for the court to instruct the jury that the "mere fear, or apprehension, or belief, however sincerely entertained" by the accused, that the deceased intended to take his life, will not justify the killing. The apprehension must have been a reasonable one, created by the circumstances surrounding the accused.

2. SAME. *Reasonable doubt.*

   It is error to instruct the jury trying an indictment that "any hypothesis arising out of the testimony inconsistent with the guilt of the accused" will require of them a verdict of acquittal. The hypothesis must be a reasonable one, sufficient to create a doubt of the guilt of the accused.

3. SAME. *Homicide. Self-defense.*

   A man may anticipate the action of his adversary, and slay him, when to strike in anticipation is necessary to self-defense, but this principle should not be given in charge to the jury in a case of homicide, except where the evidence is calculated to create the belief that, but for the timely action of the accused, he would have been the victim of his adversary.

4. PRACTICE. *Multiplying instructions.*

   It is not error in a court to refuse to multiply instructions in a case on the same principle of law.

5. CRIMINAL LAW. *Homicide. Threats. Proof. Instructions.*

   In the trial of a person indicted for murder, it is proper for the court to refuse instructions to the jury in reference to threats made by the deceased against the life of the accused, and communicated to him before the homicide, where there is nothing in the conduct of the deceased, at the time of the killing, to excite in the accused any apprehension of a design on the part of the deceased to put his threats into execution. And proof of the threats, in such a case, is unimportant and immaterial.

6. SAME. *Homicide. Charge against accused not denied. Evidence.*

   Where a man, some minutes after being shot, said to his assailant, "You have murdered me without cause or occasion, and it was a damned cowardly act," and the latter made no reply, this is admissible in evidence, as a charge not denied, against the slayer on trial for the homicide.

7. SAME. *Homicide. Threats not communicated, when evidence.*

   In some cases of homicide, evidence of the hostile acts and declarations of the deceased not made known to the accused is admissible, but only where it is necessary to resort to such acts and declarations as illustrative of what otherwise seems unexplained, or where the circumstances of the killing are unknown or doubtful, or where the acts and declarations are so connected with the killing as necessarily to throw light upon it, or where, from the peculiar circumstances of the case, proof of such acts and declarations is necessary to the ends of justice. Such evidence should only be admitted in exceptional cases, and then with caution.

ERROR to the Circuit Court of Yalobusha County.

Hon. J. W. C. WATSON, Judge.

The plaintiff in error was indicted for the murder of William S. Chambers. The evidence in the case and the facts proven are sufficiently set forth in the opinion of the court. The fifth instruction given for the state was as follows:

"If the jury believe from the evidence that John C. Kendrick killed William S. Chambers, as charged, in order to make such killing justifiable on the ground of self-defense, the danger must have been either actual, present, and urgent, or the defendant must have had reasonable grounds to apprehend a design on the part of the deceased to commit a felony, or to do him some great bodily harm, and that there was imminent danger of such design being accomplished; and the mere fear, apprehension, or belief (if the jury believe from the evidence that such fear, apprehension, or belief was entertained), however sincerely entertained by Kendrick, that Chambers designed to take his life, will not justify Kendrick in taking the life of Chambers."

To the giving of this instruction the defendant below excepted

The court refused to give the third and sixth instructions asked by the plaintiff in error, which were as follows:

"3. If there be any hypothesis or supposition arising out of the testimony inconsistent with the guilt of the accused, the jury should find him not guilty.

"6. To justify a party killing another on the ground of self-defense, he must have a reasonable ground to apprehend a design on the part of the deceased to commit a felony on, or do some great personal injury to, the slayer; and there must be imminent danger, either actual or apparent, of such design being accomplished. But whilst it is necessary that the danger should apparently be imminent, yet it is not essential that it should be immediate and impending at the very moment of the killing. A party may anticipate the attack of his antagonist, and justifiably slay him, if, under all the circumstances of the case, such course be necessary to protect himself."

The eighth instruction asked by the defendant was as follows : ·

" 8. Every man is justifiable in protecting his life and limb at whatever hazard, and if the jury believe from all the evidence before them that the defendant [from previous threats of the deceased, which had been communicated to him, that the deceased intended to kill him] had reasonable grounds to believe, at the time of the killing, from the acts and appearances of the deceased, that he intended [to put such threats into immediate execution by] taking the life of the accused, or doing him some great personal injury, they should acquit the defendant."

The court refused to give this instruction in its original form, but struck out the words inclosed in brackets, and gave it as thus modified. To this action of the court the defendant excepted.

The defendant was convicted of manslaughter. A motion for a new trial was made and overruled, and a writ of error was then sued out by the defendant. The errors assigned are stated in the opinion of the court.

*Featherston & Harris*, for the plaintiff in error.

1. The fifth charge given for the state announces that the danger to the accused must have been actual, immediate, and urgent, to justify the killing. Had it stopped there, nobody could insist that it announced the law correctly. In the effort to qualify the statement that the danger must be actual and urgent, the charge, in the next place, states the rule correctly, by giving the defendant the benefit of reasonable and well-grounded apprehensions. Had this been the end of it, perhaps no just cause of complaint could have existed ; but it · goes further. After stating that the defendant might justify himself by showing reasonable grounds for apprehending the existence of danger, and that he acted under such apprehension, the jury are told that this will not do ; that although he "sincerely believed" himself to be in danger of life or limb from his antagonist, he is, nevertheless, guilty as charged. What is apparent danger? and why is it that the law is not so

rigorous in its requirements as to say that there must be act-
ual danger? Apparent danger is the existence of facts and
circumstances which are reasonably calculated, from their
nature and character, to generate the belief that danger act-
ually exists. It is not pretended that a man may take the life
of his adversary through motives of fear, apprehension, or
cowardice alone, although it has been so held by courts of
great learning and ability. We insist, however, that where
the indications at the time are so clear and strong as to create
the belief that danger exists, and is imminent, he may safely
act; and the fact that the appearances which were so strong as
to induce the belief were misunderstood or misapprehended
by him, cannot alter the case. The very familiar illustration
given in the books, where a man is seen advancing upon
another with an empty gun, making such demonstrations as
are reasonably calculated to create the belief that he intends
shooting at the person towards whom he is advancing, is in
point. Upon a careful examination of the various cases
decided by this court involving the question of imminent dan-
ger, it will satisfactorily appear that the objection urged by us
is well taken. In *Dyson's Case,* 4 Cushm. 362, *Wesley's Case,*
8 Geo. 327, *Evans' Case,* 44 Miss. 762, and *Head's Case,* 44
Miss. 231, the principle that a well-founded belief of the
existence of danger at the time of the killing is distinctly
recognized, and the contrary has never been held, so far as
our researches have extended. The charge seems to have
been taken more especially from Head's case, above referred
to; its exact language is to be found there, except as to the
words " no belief, however sincerely entertained." This is an
interpolation — or, rather, an addition — which abrogates the
well-established doctrine, and requires direct, absolute, and
positive conviction of the existence of danger on the part of
the defendant. He may be forced, from the surrounding cir-
cumstances, to believe ever so strongly that his life or limb is
in imminent danger, yet he dare not act, because his convic-
tions, unfortunately for him, fall short of actual knowledge

of "absolute, metaphysical, demonstrative certainty." The charge went too far, and must have misled the jury to the defendant's prejudice. It was impossible for him to know that he was in imminent danger at the time of the killing, for he could not read the heart and mind of Chambers, and see what fell or revengeful purpose was actuating him; but the warnings which he had received, the aggressive conduct of Chambers before, and the hostile demonstrations on his part at the time of the killing, led Kendrick to believe, and to believe as firmly as he could, short of absolute conviction, that Chambers, in the ominous and expressive language of the witness McGehee, "had it in for him, and was going for him" then and there. It is almost impossible for us to say, with any good degree of certainty, what may or may not operate upon, influence, and control the minds of jurors, especially "in these latter days." Oftentimes ignorant, unlettered, and uninstructed, the use or omission of a single word may sway and direct their minds to a conclusion. We may attempt to analyze the human mind — bring to bear all of our knowledge of men and things, gathered from thought, experience, and observation, invoke all the aid that may be derived from analogy and reason, and reason upon the varied relations of cause and effect — but the only safe and satisfactory rule at last for our guidance, and for the promotion of the principles of right and substantial justice, is to administer the law in its purity, and give to all its benefits, as it is written. If the juries have been erroneously instructed as to what the law is, the only remedy to counteract the baneful effects of such errors is to arrest the judgment based upon them, and let the citizen stand or fall by the law as it is.

2. The principle embraced in the third charge asked for defendant is too familiar to require argument or reference to authorities to support it. It is clearly laid down in Starkie on Evidence, 9th edition, pages 756, 757 (top p.), in all the elementary writers upon the subject of evidence in criminal cases, and has been repeatedly recognized by this court in

*Alghen's Case*, 3 Cushm. 584, *Browning's Case*, 30 Miss. 656, and others.

The sixth charge refused by the court is a literal transcript from the opinion of the court in the case of *Cotton* v. *The State*, 2 Geo. 504, and reaffirmed in the case of *Long* v. *The State*, 52 Miss. 23. In the case of *Long* v. *The State* the only qualification of the principle insisted on is that it should be applicable to the facts of the case. We have no objection to this, and a very brief reference to the evidence, as disclosed by the record, will show very satisfactorily that the court below did not refuse the charge because it was regarded as inapplicable. H. W. Freeman, a witness for the state, heard Chambers say, shortly before the killing, in the presence of Kendrick, that a man named Kendrick (not the plaintiff in error, but a different man altogether) had made some derogatory remarks about his (Chambers') sister; that he had floored him, and ought to have killed him, and "I believe I will kill him before I leave town." Kendrick asked him, "What Kendrick do you allude to?" Chambers replied, "Any Kendrick. I never saw one in my life but what was a damned rascal or a damned thief." Alexander Robinson, also a witness for the state, one hour and a-half after the killing, heard Chambers say he had a knife open in his pocket and had lost it, and asked McGehee to help him look for it. McGehee, witness for defendant, testifies to the same as Robinson, with the additional statement that Chambers called him one side and asked him which side he would be on; that Kendrick and himself had a difficulty in Jackson, and that he had it in for him, and was going for him that night — all of which McGehee immediately communicated to Kendrick, warning him that Chambers would cut him if he got the chance. H. C. Rogers testifies that very shortly before the killing he saw Chambers and Alford together, both of whom were armed — Alford with a pistol, and Chambers with a knife — when Alford asked witness what side he was on in the difficulty between Kendrick and Chambers. Callahan and Lindsay saw Chambers and

Alford together shortly before the shooting, and heard Chambers propose to Alford to exchange coats, and asked him to lend him his pistol. R. Mayfield saw Chambers about one o'clock, when Chambers asked him to lend him a bowie-knife; "that he intended getting into a difficulty with that damned fellow, John Kendrick, and one or the other would be in hell before morning."

This brief reference to some of the more prominent points in in the evidence shows that Chambers was anticipating a difficulty, and that he had made preparation for it. His preparation of the knife, his threats, and deadly purpose had been communicated to Kendrick by McGehee, a few minutes prior to the killing, and he had been warned to be on his guard; not to permit Chambers to get near him, as he was prepared with a knife, and would cut or kill him if he had an opportunity. Kendrick had every reason to regard himself in danger, and to believe that Chambers was seeking a difficulty, and intended to kill him. All the facts and surroundings plainly show that he not only had reasonable grounds to apprehend immediate danger, but that his safety eminently depended upon his successfully anticipating the attack of Chambers.

3. The third assignment of error is based upon what we conceive to have been the improper admission of the testimony of John C. Chapman, over and against our objection. Chapman testifies as to what occurred sometime after the killing, when he had Kendrick under arrest. At the time of the shooting he was some seventy-five or 100 yards distant; he then ran down the street, came to the place where Chambers was lying, ascertained what was the matter, and then went after Kendrick, whom he found some forty yards distant, and arrested him, and returned to where Chambers was lying; when and where Chambers, after ascertaining that Kendrick was present, said to him, "You have murdered me without cause or occasion, and it was a damned cowardly act." Let it be remembered that this was sometime after the killing, and these were the statements of the deceased, not of the accused. The testi-

mony must have had a very prejudicial effect upon the jury, so far as defendant, Kendrick, was concerned, was no part of the *res gestæ*, and was inadmissible upon any hypothesis. The dying declarations of Chambers were inadmissible. 1 Greenl. on Ev. 156–158 ; *Lambeth* v. *The State*, 1 Cushm. 322 ; *McDaniel* v. *The State*, 8 Smed. & M. 401.

4. The fourth assignment of error is based upon the exclusion of the testimony of the witness R. Mayfield. Defendant in the court below offered to prove by the witness Mayfield that, about one o'clock on the evening of the killing, Chambers came to, and asked, witness to lend him a bowie-knife, stating that he had no pistol, and had no money to buy one, and that he intended getting into a difficulty with " that damned fellow, John Kendrick, and intended to corral the damned son of a bitch, and that one or the other would be in hell before morning " — all of which was excluded from the jury.

Interposing the plea of self-defense, upon the ground of apprehended danger, it became necessary, in order that the jury might fully comprehend all of the motives and influences under which defendant acted, that all of the facts and circumstances immediately attendant upon the killing should be submitted to them, and that they should also be made acquainted with all of the acts and declarations of the deceased prior to the killing which could throw any light upon his acts and conduct at the time, and thereby enable them the better to judge of the alleged reasonableness of the grounds for apprehending danger to life or limb, involved in the plea. Coupled with the repeated threats of Chambers, particularly those communicated to Kendrick by McGehee, and the offensive conduct and hostile demonstrations in " crowding " Kendrick that night, the evidence of Mayfield was all-important. The *animus* of the deceased towards the accused is as important as any other fact, and nothing could have more satisfactorily shown what that *animus* was than the declarations and statements made by him to Mayfield. We are justified by high authority in insisting that the threats made by Chambers, though never com-

municated, were admissible. It has been so held in the following, and, indeed, some other, cases: *Holler* v. *The State,* 37 Ind. 57; *Stewart* v. *The State,* 19 Ohio, 302; *Cornelius* v. *The Commonwealth,* 15 B. Mon. 539; *Keener* v. *The State,* 19 Ohio, 302.

Although the tendency in this state has been the other way, we respectfully submit that the rule laid down in the above cases has always impressed us as being most consonant with right and substantial justice. We are in a far better condition to judge correctly of a man's acts, knowing what purpose is in his mind; and that purpose can be ascertained by his declarations better perhaps than in any other mode. Where a man acts at his peril, where he is required to show the reasonableness of the grounds of his action, everything which tends to elucidate or explain the transaction and throw light upon it should be known. We must not stand still, but keep pace with the ceaseless progress of intelligence and civilization. The tendency of our jurisprudence is to break down all imaginary barriers which prevent a full and fair disclosure of all the facts and circumstances surrounding the transaction under consideration, or to limit our investigations in search of the "very truth of the matter." Substantial justice is the end and aim of all law, and none of the aids and appliances which tend to its accomplishment should be ignored or denied. If, however, we are to be still restricted and narrowed down to the stern and illiberal rule that no threats, however deadly and appalling they may be, and however well calculated they may be to show the *animus* of the party, and to explain the force and effect of his subsequent conduct, and the reasonable and legitimate impressions which it is calculated to produce upon the mind, are to be recognized as evidence unless communicated, we insist that the testimony of the witness Mayfield was competent to show preparation on the part of Chambers — arming himself with deadly weapons for an anticipated difficulty with Kendrick — and corroborating McGehee and other witnesses.

*W. S. Featherston,* of counsel for the plaintiff in error, argued the case orally.

*T. C. Catchings,* Attorney-General, for the State.

1. The testimony leaves no doubt as to the circumstances of the killing. It is made perfectly clear that Kendrick was the aggressor, and that there was no necessity, actual or apparent, for the shooting. Keeping this in view, no proper objection can be urged against the rulings of the court.

2. The objection to the fifth charge for the state is not well taken. The mere fear or apprehension of danger, no matter how sincerely entertained, is no justification. The circumstances must be such as would naturally excite fear or apprehension in the mind of an ordinarily reasonable man. One must, of course, judge for himself in the first instance, but he does so at his peril. 52 Miss. 36 ; 37 Miss. 349.

3. The court properly refused to give the third instruction asked for the defense. To entitle the defendant to an acquittal, in cases where the testimony is not wholly circumstantial, the hypothesis claimed to be inconsistent with his guilt must be a reasonable one.

4. The sixth charge asked for the defense was properly refused, because it had no applicability to the case. *Long* v. *The State,* 52 Miss. 38.

5. The seventh instruction was refused because it had already been substantially given.

6. The eighth instruction, as asked, was not applicable to the case, there being no doubt from the evidence as to the circumstances of the killing, and was, therefore, properly modified.

7. If Chapman's testimony was not admissible as part of the *res gestæ,* it was as being the dying declaration of Chambers. The declaration of Chambers was made under the belief that his death was imminent. *Lambeth's Case,* 1 Cushm. 322 ; *McDaniel's Case,* 8 Smed. & M. 401. His declaration as given by Chapman was also competent as an admission by acquiescence. His silence is to be taken as a virtual assent

to all that is said in his presence. Chambers charged Kendrick with having murdered him in a cowardly manner. To this Kendrick made no response. The circumstances afforded Kendrick ample opportunity to speak, and the declaration was such as properly and naturally called for some reply. 1 Greenl. on Ev. 197 *et seq*.

8. Mayfield's testimony was properly excluded. Uncommunicated threats are only admissible in cases of doubt as to which party was the assailant. Where there is no doubt concerning the circumstances of the killing, they are never admissible. Whart. on Hom., 2d ed., 694; *Johnson's Case*, 54 Miss.

*T. C. Catchings*, Attorney-General, also argued the case orally.

CAMPBELL, J., delivered the opinion of the court.

The fifth instruction for the state was properly given. The criticism upon it by counsel for plaintiff in error is because of the concluding part of it, which announces that the " mere fear, or apprehension, or belief, however sincerely entertained" by the accused that Chambers designed to take his life, did not justify the accused in killing him.

Certainly, unless appearances at the time were reasonably calculated to excite the apprehension of the accused that Chambers was about to do him some great personal injury, he was not justified in killing him.

His mere fear, or apprehension, or belief, however sincerely entertained, did not protect him in acting on it. His apprehension must have been a reasonable one, created by the circumstances surrounding him — as to which the jury were to determine. *Dyson* v. *The State*, 26 Miss. 362 ; *Wesley* v. *The State*, 37 Miss. 327 ; *Head* v. *The State*, 44 Miss. 731 ; *Long* v. *The State*, 52 Miss. 23.

The third instruction asked by the defendant below was properly refused. It is not *any* hypothesis or supposition arising out of the testimony, inconsistent with the guilt of the

accused, which makes it the duty of the jury to acquit him. It must be a reasonable one, sufficient to create a doubt of his guilt. Whart. Cr. Law., sec. 707.

The sixth instruction asked by defendant below was properly refused. It was not applicable to the facts in evidence. It is undoubtedly true, under some circumstances, that a man may anticipate the action of his adversary, and slay him, and be justifiable in doing so; but it is only in extreme cases that this may be done, and where to strike in anticipation is shown to have been necessary to one's self-defense.

An instruction to this effect should never be given except where the evidence is calculated to create the belief that, but for the timely action of the accused, he would have been the victim of his adversary. *Long* v. *The State*, 52 Miss. 23.

It was not error to refuse the seventh instruction asked by defendant, because, while it is strictly correct, it was unnecessary, for the reason that the principle it announces is contained in the eighth, tenth, and twelfth instructions given at the request of defendant, which state fairly and fully the rule of law embodied in the seventh instruction. It is not error to refuse to multiply instructions on the same principle of law.

The eighth instruction asked by defendant was refused as asked, but was modified by the court, by striking from it so much of it as coupled previous threats of the deceased, that he intended to kill defendant, which had been communicated to defendant, with acts and appearances at the time of the killing indicating that deceased intended then to put such threats into execution, and, thus modified, the instruction was given. A man whose life has been threatened in such a manner as to excite his apprehension that the party threatening has a design to take his life or do him some great personal injury, is put upon his guard, and may justly be vigilant of every movement of him who has made the threat which has come to his knowledge, in order to guard successfully against its accomplishment; and if he who made the threat makes any demonstra-

tion reasonably calculated to excite in the mind of the person threatened a just apprehension that there is then imminent danger of an attempt to execute such previous threat, whereby the life of the person assailed is endangered, or other great personal injury is about to be done him, and, thus believing, he strikes for his defense, he is justifiable. He is entitled to couple the threat of which he has knowledge with the demonstration of the person who made it, and to interpret the demonstration by the aid of the previous threat. If his knowledge of a threat, added to the hostile demonstration of the person who made it, evincing to all appearances a present design to execute it, is justly calculated to excite in his mind a sincere apprehension that he is thereby in imminent danger of losing his life or suffering other great personal injury, and to avert this he kills his assailant, he has but defended himself.

But, although one may know that his life has been seriously threatened, he may not for this slay him who threatened it. He may watch the movements of the person who threatened, and, interpreting his demonstrations by the light of the threat, he may strike for his defense whenever he has just ground, from the threat and the overt acts of his adversary, to believe that there is imminent danger of the execution of the threat so as to endanger his own life or do him some great personal injury. He must judge for himself, and decide at the time at his peril. If a jury shall think he had reasonable ground, situated as he was, to act as he did, he will be justified. He is to be judged by his action, coupled with his knowledge that his life had been threatened, and is entitled to the benefit of his quickened apprehension excited by this knowledge, and the fact that he interpreted the demonstration of his assailant by the light of his previous hostile declaration. Such we understand to be the use of threats which had been communicated to a defendant before he killed his assailant.

But, as one may not lawfully kill another merely because of a threat, however serious, it is not admissible for one accused

of murder to invoke the rule just announced where the evidence leaves no room for doubt as to the circumstances of the homicide, and excludes all ground for believing that there was any apprehension on the part of the accused that he was in any danger from the person he killed. In such case a previous threat can have no influence in favor of the accused. It matters not how many threats were made, if no attempt was made to execute them, and no demonstration by the person having made them calculated to induce the belief of an intention to execute them. In that state of case there is nothing with which to couple the threats, and they are not available to the defendant.

The eighth instruction, as asked by defendant, is correct as applied to a case where the accused had been threatened with loss of life or great personal injury, and had killed his adversary under such circumstances as to excite his just apprehension, from overt acts of his adversary, added to his previous threats, that he was then about to carry his threat into execution; but it was properly refused in this case, in view of the evidence, which shows clearly that, at the time when he was shot, Chambers was neither about to execute any threat upon defendant, nor was in a situation to do him any injury. There is nothing in the case to induce the belief that the accused had the least apprehension of danger from Chambers.

It is proper to give the accused the benefit of the rule applicable to previous threats communicated to him, as we have announced it, where the evidence does not authorize the conclusion that there was nothing in the conduct of the deceased to induce the belief of a purpose to execute his threat; but where, looking to all the evidence, it may be confidently asserted that there was nothing in the conduct of the person who made the threat to excite the apprehension of any design on his part to put the threat into execution, it is the duty of the court to deny to the accused the rule of law applicable to the other state of case.

The third error assigned is based on the admission of evi-

dence of what Chambers said to defendant about the shooting, some minutes after it occurred, as Chambers lay wounded. "Chambers said, 'Kendrick, you have murdered me without cause or occasion, and it was a d—d cowardly act.' To which Kendrick made no reply." This was not admissible as part of the *res gestæ*, because it occurred sometime after the shooting, and was merely a narrative of the past. It was not admissible as a dying declaration, because not made under the solemnity required in such case. But it was admissible as something said to the defendant, and not denied by him. It was for the jury to attach such value to it as it deserved. They might well regard it as of little worth, considering it the ebullition of angry passion, and that under the circumstances it was not surprising that Kendrick made no reply.

The next error complained of is that the court excluded testimony offered by defendant. He proposed to prove that, on the night of the shooting, Chambers had desired Alford to exchange coats with him, and to let him have his pistol — all of which was refused by Alford ; and that, on the day before the shooting, Chambers applied to Mayfield for a bowie-knife, saying he had neither money nor pistol, and that "he was going to have a difficulty with that d—d rascal, Kendrick, and would corral him before night, and that one of them would be in hell before morning," or some such words, but Mayfield did not let him have a knife — and none of this was made known to Kendrick before the shooting. All of this proposed evidence was excluded, and properly. It could not have influenced Kendrick, for he did not know of it. It had no relation to the shooting, and was not needed to illustrate it. Chambers did not get Alford's coat or pistol, nor did he get a bowie-knife from Mayfield, nor was there such a direct connection between these acts and his encounter with Kendrick as to cause them to be admissible as explaining what otherwise would be doubtful. There is no uncertainty here as to the circumstances of the shooting. The part acted by Chambers is shown, as well as that performed by Kendrick. There is no necessity

for resort to the previous declarations and acts of Chambers, for we are informed exactly what he did, and how he was wantonly murdered by Kendrick. The acts and hostile declarations of a person not communicated to the accused, who has killed him, are in some cases admissible in evidence, as held in *Johnson* v. *The State*; 54 Miss., but it is only where it is found to be necessary to resort to such acts and declarations as illustrative of what otherwise seems unexplained — as, where the circumstances of the crime charged are unknown or doubtful, or where the acts and declarations are so directly connected with the act out of which the alleged crime arises as to necessarily throw light upon it, or where, *from the peculiar circumstances of the case*, it can be said that such previous acts or declarations are necessary to the ends of justice. It is only in exceptional cases that such evidence can be admitted, and caution in making the exception should be observed. In this case the evidence was properly excluded.

C. McGehee, a witness for defendant, testified that, during the night of the shooting, Chambers stuck a knife in the counter of the saloon in which they were, and said, speaking of Kendrick, "he had it in for him, and was going for him to-night;" and McGehee told Kendrick of this, and to look out lest Chambers might cut him or hurt him. McGehee had been a witness before the grand jury in this case, and on cross-examination on the final trial he was asked if he had told the grand jury about Chambers having stuck the knife in the counter, and about his having said "he had it in for him, and was going for him to-night." To which he replied that he thought he had told this to the grand jury, but if not, it was either that he had forgotten it at the time or that the questions were not asked him, so as to call out this information. After the defendant had closed his evidence the state introduced several of the grand jurors, who testified that McGehee, when before them as a witness, did not say anything about Chambers having stuck a knife in the counter, or having made the declaration testified to about Kendrick. It did not appear from the evidence of the grand jurors that any questions were

propounded to McGehee suited to elicit such answers, or that any questions were put to him about the difficulty between Chambers and Kendrick. After this evidence by the grand jurors, defendant offered several witnesses to prove that McGehee was a man of good character for truth and veracity, and worthy of credit. This testimony was rejected, and its rejection is alleged to be error.

McGehee's testimony was wholly unimportant and immaterial. What if Chambers did what he says, and he told Kendrick of it; it could not avail to shield Kendrick from guilt for the wanton murder of Chambers, whom he shot when he was doing nothing to excite the fears of Kendrick. Concede the absolute truth of all that McGehee testified, and Kendrick was wholly unjustifiable for shooting Chambers.

It is wholly immaterial whether the jury believed McGehee or not. If he had been sustained by a cloud of witnesses, his evidence could not properly have availed defendant. It was, therefore, not error to refuse to admit evidence of his character.

The last ground of error assigned is not well taken. The plaintiff in error cannot complain of the verdict. He may well felicitate himself on a lucky escape from a verdict of guilty of murder.

Judgment affirmed.