LEVERETT *v.* STATE

[73 South. 273, Division B.]

1. CRIMINAL LAW. *Trial. Court's remarks in selecting jury. Homicide. Admissibility of evidence. Previous uncommunicated threats by decedent. Previous communicated threats: Self defense. Circumstances preceding act. Instructions. Weight of evidence. Ignoring defendant's version.*

Where on a trial for homicide the whole trend of the *voir dire* examination was to influence the proposed jurors against the

defendant and to strongly impress them with the idea that their duty was to convict; and each juror was given to understand that he would be a man of very little moral courage unless he found a verdict of guilty, such an examination was erroneous and very prejudicial to the defendant.

2. HOMICIDE.  *Admissibility of uncommunicated threats by decedent.*

It was prejudicial error on a trial for homicide, to exclude testimony of uncommunicated threats by decedent against accused where accused claimed to have acted in self defense, since such threats indicated the feeling of deceased toward accused.

3. SAME.

It was also prejudicial error to exclude testimony by the deceased towards accused where such threats had been communicated to accused before the killing.

4. SAME.

Where there was evidence that decedent had made threats against accused at a certain place, it was prejudicial error to exclude corroborative evidence that deceased was in fact, at the time mentioned, at such place.

5. HOMICIDE.  *Admissibility of evidence.  Self defense.*

Where accused claimed he killed deceased in self defense in a quarrel, over deceased's improper relations with defendant's wife, it was prejudicial error to exclude the wife's testimony that she had written a letter found by accused on the person of deceased, since such evidence had a tendency to prove the corroborative circumstances of the defense genuine.

6. HOMICIDE.  *Admissibility of evidence.  Self defense.  Circumstances preceding the act.*

Where on a trial for homicide accused claimed he killed decedent in self defense, it was prejudicial error to admit evidence that the night before the killing some one wearing clothes similar to accused's was seen watching the mill where deceased worked, where there was no further identification.

7. CRIMINAL LAW.  *Instructions.  Weight of evidence.*

Where on a trial for homicide accused claimed he killed deceased in self defense in a quarrel over deceased's improper relations with accused's wife, an instruction to the jury for the state, to disregard the finding of a letter from accused's wife on decedent's body, was prejudicial error, because on the weight of evidence and because such evidence was important and material evidence as corroborative of defendant's claim of self defense.

8. INSTRUCTIONS. *Self defense. Ignoring defendant's version.*
Where on a trial for homicide, defendant testified that he shot deceased in self defense, but did not know the position of deceased when he fired the last three times because of the smoke. In such case an instruction to find the defendant guilty if he fired after deceased turned his back, and while defendant was in no real or apparent danger at his hands, was prejudicial error as ignoring defendant's version of the shooting and of what occurred at the time.

9. CRIMINAL LAW. *Institutions. Self defense. Undue prominence.*
Where on a trial for homicide the accused depended alone on the ground of self defense, instructions emphasizing the fact that no other defense was involved, were erroneous as disparaging the testimony regarding the cause of the quarrel.

10. HOMICIDE. *Instructions. Self defense.*
On a trial for homicide where defendant claimed to have acted in self defense, it was prejudicial error to refuse an instruction for the defendant, that the jury might consider a previous threat by decedent to kill accused the next time they met.

11. HOMICIDE. *Instructions. Self defense.*
In a trial for homicide where accused defended on the ground of self defense, it was error for the court to refuse the defendant an instruction, that a man about to be assaulted with a deadly weapon is not required by the law to wait until his adversary is on equal terms with him, but may rightfully anticipate his action and kill him when to strike in anticipation reasonably appeared to be necessary to self defense.

APPEAL from the circuit court of Forest county.

HON. PAUL B. JOHNSON, Judge.

Thomas H. Leverett was convicted of murder and appealed. The facts are fully stated in the opinion of the court.

*E. E. Rose, Currie & Currie* and *J. W. Cassedy,* for appellant.

If the jury believed the appellant went up to Richton Mill on the night just previous to the shooting, looked into the mill and saw Bradley, the deceased, while he was engaged about his work, in the face of his denial, this would go a long ways toward convincing them that

appellant's business in Richton was to look him up and kill him. It was on this theory that the evidence was offered and on this theory that it was allowed by the court. For the present purposes we assume that it will be agreed that the intent and purpose of the evidence was material, and that it was received, and materially aided the state in securing a conviction.

The only question then left to consider was the court in error in allowing this testimony to go to the jury? The objection to the testimony was that it was not sufficiently shown that the appellant was the person the witnesses were saying that they saw looking into the Richton mill window. We contend that before this evidence should have been allowed to go to the jury the state must have made out at least a *prima facia* case of the defendant. We readily agree that the identity of a person may be shown in many ways, but our contention in this case is, it must be shown in some way. Just suspicion or inference, or probability certainly would. not be sufficient. (Wigmore on Evidence, sec. 411-412-413, and *State* v. *Alton,* 105 Minn. 410, 15 Am. & Eng. Ann. Cases 806.)

Second. The court erred in ruling out the testimony of Dr. W. W. Weathersby, Mrs. T. H. Leverett and S. W. Wilkerson. (Under this heading assignments number 8-9-10-11-12-13-14 and 15 will be included.)

We contend that however strong the case may be for the state, the defendant was entitled to have his version of the case submitted to the jury, even though his version of the case was supported by his testimony alone. This identical question was before the court in the case of *Harris* v. *State,* 72 Miss. 99.

This court also in the case cited below has held that when evidence has been offered tending to prove that the deceased was the aggressor, even though there may be a conflict of testimony on the point, evidence of previous though uncommunicated threats is to be admitted as supporting the other evidence. See *Johnson* v. *State,*

64 Miss. 430; *Guice* v. *State*, 60 Miss. 714; *Hawthorn* v. *State*, 61 Miss. 749; *Johnson* v. *State*, 66 Miss. 189; *Echoles* v. *State*, 55 So. 485; *Bell* v. *State*, 66 Miss. 192; *Miles* v. *State*, 54 So. 946; *Prime* v. *State*, 73 Miss. 838.

The testimony of Wilkerson was admissible on two theories, first, it corroborated the defendant as to the beginning of the difficulty; second, it corroborated the testimony of Dr. W. W. Weathersby in that it helped to identify the person who was talking to and who made the threats against the life of the defendant, as being the deceased Bradley, and it linked in and corroborated the testimony of Mrs. Leverett as to the telephone conversation in which deceased Bradley again threatened defendant's life.

We respectfully submit that the action of the court in ruling out this testimony alone is sufficient to entitle the defendant to a new trial.

In passing on the instructions we submit to the court without further argument that instructions for the state numbered 1, 2, 3, and 4, are erroneous for the reasons stated in the assignment of error and motion for a new trial. We do not renew said statements now, because nothing further can be added to the statements already given. We wish to discuss, however, instructions numbered 5 and 9 together. The court will note that instruction number 5 and also instruction number 9 singles out a part of the testimony and an important and material part, and calls the jury's special attention to same, and directs them in instruction number 5 that—"still the finding and reading of this letter is no excuse, justification nor defense for the taking of the life of Ed. Bradley"—and instruction number 9 says—"still such conduct in writing the same on the part of Leverett's wife, does not in law, justify or excuse, nor makes a legal and lawful defense for the taking of Ed. Bradley's life by Leverett, the defendant, and you should not so consider the same if you believe from the testimony beyond a reasonable doubt Leverett killed Ed. Bradley."

We think the writing of the letter above referred to, was a very important item to be considered by the jury in determining who was the aggressor in the difficulty. On this theory and on this theory only, the letter was allowed by the court to be introduced in testimony and it ought to have been received by them, as any other part of the testimony without being singled out, separated and set apart in instructions by the state, and specifically condemned by said instructions. We contend that a man ought to be tried by the law as a rule, and that the testimony ought not to be pointed out by the court in a way to effect its weight as testimony.

We submit that instructions number 6 and 7, ought to have been refused by the court because instruction number 6 announces that—"the only excuse or justification offered by the defendant for the killing of Ed. Bradley is self-defense."—This is a peremptory instruction, withdrawing from the jury's consideration the defense of . . . failure to believe the testimony offered on any material point. Instruction number 7 goes still further than instruction number 6 and announces to the jury that . . . "the defendant offers self-defense for the killing of Ed. Bradley and under the law in this case, you should not consider any defense other than that offered and supported by the testimony in this case."

The court will note that instruction number 6 used the statement that the only excuse or justification offered by the defendant, etc., and instruction number 7 after announcing the same proposition is peremptory that the jury were not to consider any defense other than that . . . "offered and supported by the testimony in this case." The reading of these two instructions together will convince the court that the effect of these two instructions were to remove the burden, from the state, of showing defendants guilt beyond every reasonable doubt and placing the burden upon the defendant to offer some satisfactory defense, and see that same is supported by the testimony whereas we understand the rule to

be that the state must show the defendant to be guilty beyond all reasonable doubt, and this is true even though the defendant offered no testimony or no defense.

We respectfully submit that the court was in error in granting the instructions above referred to for the state, and because of this appellant should be awarded a new trial.

We wish to call the court's attention particularly to instruction number 1, the court having allowed the defendant in his testimony to state to the jury the threats delivered by deceased to him while at Columbia. We undertook before the court in this instruction to say to the jury for what purpose this testimony might be received by them. After the court had granted to the state instructions numbered 5 and 9 saying to the jury that the finding and reading of the letter was no excuse or justification for the killing, and was not to be considered by the jury in that connection, it then became of greater importance to the defendant to have the jury properly instructed, as to how this testimony might be received by the jury, so in instruction number 1, we requested the court to instruct the jury that the threats used in connection with this particular transaction and allowed by the court in the evidence were to be taken into consideration in determining which was the aggressor in the difficulty. We have heretofore cited the court on the question of the admissability of the testimony of Dr. W. W. Weathersby, Mrs. T. H. Leverett and ——— Wilkerson, the cases decided by this court on the question of the admissability of threats communicated and uncommunicated, each of these cases also pronounce the rule that the purpose of such testimony is to aid the jury by the consideration of the threats in determining who was the aggressor in the difficulty.

We also direct the court's attention to instruction number 2; nowhere in the case, from the defendant's point of view, has the jury been told the meaning of the law term, "overt act." The state by its instruction told the jury that if the appellant killed deceased at a time when he was in

no danger real or apparent, etc.    . . .    then he was
guilty of murder. From appellant's point of view it then
became highly important for the jury to be instructed as
to what the law was with reference to the meaning of an
overt act. An overt act as we understand it, may be a
motion or a gesture, which under ordinary circumstances
would be considered trivial, but if weighed in the light of
the surroundings and taking into consideration the atti-
tude of appellant and deceased at the time of the shoot-
ing, then such motion or action could be considered as an
overt act. For this reason we say, the court ought to
have granted instruction number 2 explaining this mat-
ter to the jury.

*Ross A. Collins,* Attorney-General, for the state.

The trial judge must exercise some discretion in exclud-
ing from the jury prior threats and details of controversies
which under the facts of the case have no relevancy.

In the case of *Holly* v. *State,* 55 Miss. 425, CHALMERS,
J., in opinion of the court on page 431 said that while
the prisioners should be given the benefit of every reason-
able doubt, it was nevertheless the duty of the court to de-
cide whether there has been any evidence upon this par-
ticular point so as to warrant the admission of such prior
threats; "but the delicacy of the duty will neither pre-
vent nor excuse him from discharging it." See, also,
*Harris* v. *State,* 47 Miss. 318; *Evans* v. *State,* 44 Miss.
762; *Edwards* v. *State,* 47 Miss. 581; *Newcome* v. *State,*
37 Miss. 383; *Holly* v. *State,* 55 Miss. 424; *Kendrich* v.
*State,* 55 Miss. 436; *Harrison* v. *State,* 66 Miss. 532.
Appellant next complains of the giving of the state's sev-
eral instructions. Instruction number 5 reads as follows:

"The court instructs the jury for the state that even
though you believe from the evidence that Leverett found
in and removed from the pocket of Bradley a letter and
then read the same and that the same is the letter intro-
duced in this case, still the finding and reading of this
letter is no excuse, justification nor defense for the tak-

ing of the life of Ed. Bradley. If you believe from the testimony beyond a reasonable doubt that Leverett took the life of Bradley, and you should not under your oaths as jurors consider the letter as an excuse, justification or defense.''

You will note that appellant in his argument quotes only a part of this instruction and that the instruction constituted as a whole, correctly states the law. The writing of this letter forms no basis of defense for the appellant and its relevancy as a part of the evidence was ended when the appellant showed that he found this letter and that the deceased, upon finding that it had been discovered by him, threatened to kill him. However, instead of carrying out his threats the record shows that the deceased immediately left town and apparently tried to avoid being thrown with the appellant.

Instruction number six merely confined the jury's attention to the issues in the case, telling them that the appellant's only plea, which they may consider, is that of self-defense.

He next complains of instruction number 7 for practically the same reason, contending that its effect was to instruct the jury peremptorily against the appellant.

The appellant argues at length against the propriety of giving the several state's instructions but an examination of these instructions show that they are proper and are based on facts applicable to the state's theory, and for which ample warrant is found in the record.

The appellant strongly contends that instruction no. 8 was improper in that it deprived him of his plea of self-defense. The jury is told by this instruction that if the appellant shot the deceased when he had his back toward him and in no real or apparent danger, then there is no excuse or justification, but it also tells them that they must believe that the shots were fired wilfully, feloniously and of his malice aforethought to kill and murder the deceased. I submit that if it were not for the concluding part of this sentence appellant's contention would have

some weight but that on the whole the instruction is clear
and contains the law applicable to the facts.

Reviewing the record as a whole and studying care-
fully the many alleged errors, I submit that the trial court
was correct in its rulings and that the verdict was amply
warranted by the facts of the case.

I therefore respectfully submit that the case should be
affirmed.

POTTER, J, delivered the opinion of the court.

The appellant in this case was indicted by the grand jury
of Perry county on a charge of murdering one Ed. Bradley.
He was tried once in Perry county, which resulted in a
mistrial. A motion for a change of venue was made, and
the venue changed to Forrest county. The first time the
case was tried in Forrest county, there was a hung jury,
and a mistrial entered, and upon a third trial of the case,
being the second trial in Forrest county, the defendant
was convicted and sentenced to the penitentiary for life.

The appellant admitted at the trial that he had killed
Bradley, but claimed that he acted in self-defense.

This case must be reversd. The errors committed in
the court below begin with the court's examination of the
jurors on *voir dire.* We quote partially from the examina-
tion of one of the jurors by the court on his *voir dire* ex-
amination, which questions counsel agree are the same as
those propounded to all the jurors by the court in quali-
fying the jury:

"By the Court: Q. Do you believe in law enforcement?

"Juror: A. Yes. Q. Are you in sympathy with law
breaking of any kind—do you believe in enforcing all the
criminal laws of the state? A. Yes. Q. You realize that this
is what protects you? A. Yes. Q. Are you in favor of help-
ing to enforce all laws as a citizens? A. Yes. Q Do you
feel like it is your duty as a citizen to enforce the laws?
A. Yes. Q. Do you understand, when you are taken on the
jury, it is your duty to convict people because you are in
sympathy with law enforcement do you? A. No. Q. Now,

in this case Mr. Leverett is charged with murdering Ed.
Bradley over here at Richton, Miss. If you are taken as
a juror to try Leverett, will you go into the jury box and sit
there and listen carefully to the testimony that the witnes-
ses give you from the stand, and consider that carefully,
and then take the written instructions that the court gives
you; that is, the law in the case. The court will give you
certain written instructions that will be applicable to the
case, and all the law there is in the case. There will not be
any law applicable to the case except the written instruc-
tions that I give you. Will you accept that as the law of
the case? A. Yes. Q. Now if you are taken as a juror to try
this case, will you try it on sentiment? Are you one of
these fellows that pay attention to every insinuation or
suspicion, or have they got to show you the facts before
you will act? A. The facts. Q. Suppose that after you have
heard all the evidence in the case you are not satisfied
that the defendant is guilty—you have a reasonable
doubt of that—will you give the defendant the benefit of
the doubt? A. Yes, Q. But if you are satisfied that he is
guilty of murder beyond a reasonable doubt, have you
the moral courage to vote him guilty? Have you got the
nerve to do your duty? A. Yes, sir. Q. Would you do
it? A. Yes, sir. Q. If the evidence in this case satisfied
your mind beyond a reasonable doubt and to a moral
certainty that T. H. Leverett murdered Ed. Bradley, as
charged in the indictment, would you find him guilty?
A. Yes, sir. Q. You would do that now, would you? A.
Yes. Q. You feel like you have the moral courage to do it,
do you? A. Yes. Q. If you go on the jury and sit there to
try the case, after you have heard all the evidence in the
case, in the state's lawyers, Mr. Hall, Mr. Talley, or Mr.
Cassedy, or Mr. Currie, or Mr. Davis would get up there
and try to inject something in there, insinuation, would
you pay any attention to that? A. No. Q. You would go by
the law and the evidence; you would say: 'Gentlemen,
you have not shown me that; that is not in the record.'
Would you do that? A. Yes. Q. You are going to try the

case by the law that the court gives you, and by the evidence that you hear from the stand? A. Yes. Q. From these two things you promised me upon your sacred word of honor and your oath that you will try it? A. Yes.''

There was objection to the questions propounded by the court, upon the ground that the court indicated to the proposed jurors what finding they ought to make on the evidence afterwards to be introduced by the defendant in the trial of the case. The defendant in this case claimed that the controversy between himself and the deceased arose on account of the discovery of illicit relations between the wife of the defendant and the deceased, Bradley. On the defendant's theory of the case, the testimony with reference to the improper relations above mentioned was admissible because the decedent had made certain threats, growing out of this controversy, against the defendant, and because the circumstances of the parties were explanatory of the condition of the mind of deceased at the time of the homicide, and tended to show what the deceased probably would have done, under the circumstances, and it is insisted that such facts and circumstances are corroborative of defendant's statement that he shot the decedent in self-defense, and that when the court referred in his examination of the jurors to ''sentiment being injected into the record,'' the question went directly to the weight the jurors should give to the evidence to be introduced. The court, undoubtedly, anticipated that evidence would be introduced showing the illicit relations between the decedent and appellant's wife, and was attempting to forestall any attempt on the part of appellant to plead the so-called ''unwritten law.'' The evidence, however, offered by the appellant, with reference to the illicit relations between his wife and the decedent, and the controversy and threats growing out of same, was a material part of his case, and served a legitimate purpose as corroborative of the appellant's version of the affair in so far only, of course, as it shed light on who was the aggressor. Evidently the judge, in question-

ing the jurors about whether or not they would be control-
led by ''sentiment,'' anticipated this very testimony, and,.
by his questions, greatly disparaged this evidence. The
effect of such questions on the minds of the jurors was as.
effective as if the judge had said, in so many words:

''The self-defense story in this case is 'trumped-up.''
The defendant is trying by this means to plead the 'unwrit-
ten law.' ''

The whole trend of the *voir dire* examination was to in-
fluence the proposed jurors against the defendant, and to
strongly impress them with the idea that their duty was.
to convict. Each juror was given to understand that he
would be a man of very little moral courage unless he found
a verdict of guilty in this case. Such examination was.
erroneous, and very prejudicial to the defendant.

The testimony of Dr. W. W. Weathersby was to the
effect that he met Bradley, the deceased, at Brookhaven,
and that Bradley told him he was on a hunt for a woman,
and asked him if he knew the Dunns (Mrs. Leverett having
been a Dunn before her marriage), and was told that he
did; and Weathersby testified that Bradley told him that
the woman he was hunting for was a married woman, and
remarked that there would be trouble if her husband, who
was at Columbia, found out about their relations, and
that he would either have to kill the husband or the hus-
band would kill him. This evidence was admissible, and the
court erred in excluding it. Though uncommunicated, the
conversation related to the feeling Bradley had for Lever-
ett, and was threatening.

Likewise, the testimony of Mrs. Leverett, with refer-
ence to a conversation with Bradley over the telephone,.
which conversation was communicated to Leverett, was
admissible for the same reason. *Harris* v. *State,* 72
Miss. 99, 16 So. 360; *Holly* v. *State,* 55 Miss. 424.

The testimony of S. W. Wilkerson, who carried Bradley
from Columbia to McComb City on the day he is said to
have gone to Brookhaven, should not have been excluded,.
because it was corroborative of the testimony of Mrs.

Leverett and Dr. Weathersby, to the extent of showing Bradley was in Brookhaven at the time indicated by their testimony. The testimony of Mrs. Leverett and Dr. Weathersby was vital to defendant's case, as corroborative of his own evidence that he acted in self-defense.

There was also error in excluding the testimony of Mrs. Leverett that she had written the letter found by Leverett in Bradley's pocket at Columbia. The introduction of this evidence had a tendency to prove the corroborative circumstances of the defense genuine.

It was error to permit the introduction of evidence that a man in a Palm Beach suit of clothes, such as defendant wore at the time, was seen, the night before the killing, looking up into the mill where Bradley was working, without further identification. The fact that a person had on Palm Beach clothes or white clothes in the summer time, when many people wear such clothes, is insufficient to show that a person who had on such clothes was a particular person.

The appellant assigns as error the giving of instructions 5 and 9 for the state, upon the ground that these instructions single out a part of the testimony as important and material, and calls the jury's special attention thereto; and it is urged that these two instructions are on the weight of the evidence, and should not have been given. The instructions are as follows:

"(5) The court instructs the jury for the state that, even though you believe from the evidence that Leverett found in and removed from the pocket of Bradley a letter and then read the same, and that the same is the letter introduced in this case, still the finding and reading of this letter is no excuse, justification, nor defense for the taking of the life of Ed. Bradley, if you believe from the testimony beyond a reasonable doubt that Leverett took the life of Bradley, and you should not, under your oaths as jurors, consider the letter as an excuse, justification, or defense."

"(9) The court further instructs the jury for the state that, even though you believe from the evidence Leverett's wife wrote the letter introduced in this cause, and which Leverett claims he got out of Bradley's pocket at Columbia, still such conduct in writing the same on the part of Leverett's wife does not, in law, justify, excuse, nor make a legal and lawful defense for the taking of Ed. Bradley's life by Leverett, the defendant, and you should not so consider the same, if you believe from the testimony beyond a reasonable doubt Leverett killed Ed. Bradley."

We think the above instructions bear directly on the weight the jury should give the evidence with reference to the letter found in Bradley's pocket, and the jury were, in effect, told not to consider this evidence, although, as a matter of fact the evidence under consideration was important and material evidence as corroborative of the defendant's claim of self-defense.

The giving of instruction No. 8 for the state is assigned by the appellant as error. This instruction reads as follows:

"The court further instructs the jury for the state that if you believe from the testimony beyond a reasonable doubt that the fatal shot fired by the defendant was fired after the deceased, Bradley, had wheeled or turned his back to the defendant, and while the defendant was in no real or apparent danger at the hands of Bradley, then under the law there is no excuse for, or justification of, the defendant for the same, if you believe from the testimony beyond a reasonable doubt that he fired it willfully, feloniously, and of his malice aforethought to kill and murder Ed. Bradley."

This instruction, in effect, instructs the jury to find the defendant guilty even though he fired the first shot in self-defense, if the deceased was killed by the subsequent shots after he had turned his back. The testimony for appellant showed that the shots were fired in rapid succession, and that, on account of the smoke and excitement, the defendant did not know the position of the deceased when he shot.

the last three shots. This instruction entirely ignored the defendant's version of the shooting, and what occured at the time, and his testimony that the shots were fired in rapid succession, and that in the excitement and smoke he did not know what position the deceased was in at the time he fired the shots subsequent to the first. The giving of this instruction was manifest error.

Instructions 6 and 7 are as follows:

"(6) The court further instructs the jury for the state that the only excuse or justification offered by the defendant for the killing of Ed. Bradley is self-defense.

"(7) The court further instructs tthe jury for the state that the defendant offers self-defense for the killing of Ed. Bradley, and under the law in this case you should not consider any defense other than that offered and supported by the testimony in this case."

While possibly not erroneous, by emphasizing the uncontroverted fact that appellant's defense in this case was self-defense, the above instructions reflected by *innuendo* on defendant's testimony with reference to the trouble out of which this controversy grew. Why stress, with two instructions, the fact that the defense in this case is self-defense, when no other defense is suggested, except upon the presumption that the jury might otherwise give more credence to the testimony with reference to the original cause of the trouble than the trial judge thought it should give to such testimony? In addition, these instructions seem, in a measure, to shift the burden of proof from the state to the defendant.

Instruction No. 1, requested by the appellant, and refused, is as follows:

"The court instructs the jury for the defendant that, if you believe from the evidence that on a day prior to the killing defendant found a letter from his wife to the deceased, Bradley, and that the defendant and deceased, Bradley, got into a difficulty on account of same, if you believe when defendant and deceased, Bradley, separated Bradley said to the defendant: 'You be God damned sure

you are ready the next time we meet; I'll never give you this chance again'—or words to that effect, then you may take this into consideration in determining who was the aggressor in the difficulty at Richton.''

This instruction is correct, and should not have been refused. It was perfectly competent for the jury to take into consideration, in determining who was the aggressor in the difficulty at Richton, the threats previously made by Bradley to the defendant.

Instruction No. 3, asked for by the defendant, and refused, is as follows:

''The court instructs the jury for the defendant that the law is that a man assaulted, or about to be assaulted, with a deadly weapon is not required by the law to wait until his adversary is on equal terms with him, but may rightfully anticipate his action and kill him, when to strike in anticipation reasonably appeared to be necessary to self-defense; and, unless the jury are satisfied to a moral certainty and beyond every reasonable doubt that the deceased, at the time of the killing, was not attempting to draw or use a pistol, then they must find the defendant not guilty.''

We think this instruction is applicable to the case, plainly states the law, and should have been given; no other instruction of like purport having been given.

For the errors above set out, this case is reversed and remanded.

*Reversed and remanded.*