## HAMBRICK v. STATE.*

(Division B. April 6, 1925.)

[103 So. 364. No. 24227.]

HOMICIDE. *Uncommunicated threat by deceased against accused on morning of killing, held admissible to show who was aggressor.*

In a murder case, where the defendant relied on self-defense, and the evidence was conflicting as to whether the defendant or the deceased was the aggressor in the difficulty resulting in the death of the deceased, an uncommunicated threat made by the deceased against the defendant on the morning of the day of the homicide was admissible in evidence on behalf of defendant as having a bearing on the question as to who was the aggressor.

*Headnote 1. Homicide, 30 C. J., Section 477.

APPEAL from circuit court of Lauderdale county.
HON. C. C. MILLER, Judge.

C. E. Hambrick was convicted of manslaughter, and he appeals. Reversed and remanded.

*Jacobson & Brooks,* for appellant.

The excluded testimony was unquestionably competent. *Kendrick* v. *State,* 55 Miss. 436; *Lucas* v. *State,* 109 Miss. 82; *Leverett* v. *State,* 112 Miss. 394. Whether to be construed as a threat or not, it throws light upon who really was the aggressor in the fight.

*J. L. Byrd,* Assistant Attorney-General, for the state.

Appellant complains of the exclusion of certain testimony in regard to alleged threats said to have been made by the deceased. We submit that the court committed no error in excluding this testimony, for a careful reading of the testimony offered will show that

there is no threat contained in any of the language alleged to have been used by the deceased. *Kendrick* v. *State,* 55 Miss. 436, does not, we submit, support appellant's contention here. Neither are the alleged threats here sought to be introduced at all similar to the alleged threats on which the opinion is based in *Lucas* v. *The State,* 109 Miss. 82, and the holding there is inapplicable here. The same may be said of the case of *Leverett* v. *State,* 112 Miss. 394. There the testimony sought to be introduced was in regard to an actual threat, but the testimony in the instant case contains absolutely no hint of intended harm by the deceased toward the appellant.

We submit, therefore, that the evidence was properly excluded.

Argued orally by *Harden Brooks,* for appellant, and *J. L. Byrd,* Assistant Attorney-General, for the state.

Anderson, J., delivered the opinion of the court.

Appellant, C. E. Hambrick, was indicted in the circuit court of Lauderdale county of a charge of the murder of Clint Boykin, was convicted of manslaughter, for which he was sentenced to the penitentiary for a term of two years. From which judgment he prosecutes this appeal.

On the 22d day of July, 1923, appellant, near the home of Mr. Moore, a witness in the case, in the western part of Lauderdale county shot Clint Boykin to death with a pistol, shooting him three times. The evidence for the state tended to show that appellant was the aggressor in the difficulty, and was guilty of murder in the killing of the deceased. The evidence for appellant tended to show that the deceased was the aggressor, and that appellant shot the deceased in self-defense. It is undisputed that the homicide took place as the result of the relations between the deceased and appellant's wife. The deceased and appellant had been friends. Appellant, shortly before the homicide, had left Lauderdale county and gone

down into Clarke county. He returned to Lauderdale county shortly before the homicide, probably on the same. day. On the morning of the day of the homicide, J. B. Shirley, a witness on behalf of appellant, met the deceased, between whom a conversation took place which appellant offered to prove as constituting a threat by deceased against him. The evidence offered appears in the record as follows:

"Q. I will ask you if you saw Mr. Boykin the day he was shot? A. Yes, sir; I did.

"Q. Did you have any conversation with him that day about Hambrick. A. Yes, sir.

"Q. State what, if anything, did Mr. Boykin have to say to you about any impending trouble. (Objected to. Jury retire, and the following testimony was heard by the court out of the hearing and presence of the jury:)

"By Mr. Brooks: Q. What, if anything, did he say to you on that occasion? A. Why, I met him that morning at about eight o'clock south of the depot at Point, as he got off the train, and I said: 'Hello Clint, where are you going?' And he said: 'I am going over towards Mr. Moore's.' He said: 'I want to go over and see if I can hang onto a job.' I said I thought maybe he had gone down to the hardwood—I heard that they had moved down to Quitman—

"Q. The. hardwood mill you mean? A. Yes, sir; and he asked me if I saw Mr. Hambrick's folks as I passed there, and I told him that I did not, and he said that he was going down to Mr. Moore's and see if I can't get a job until I can get an opportunity of seeing Hambrick's wife. I knew that he had been working for Hambrick, and I said: 'Clint, are you going back to work for Mr. Hambrick?' And he said: 'No; I'm not going back to work for him; I am expecting trouble with Hambrick when I get there.' And I said: 'I would not go if I were you; you just turn around and go back with me.' I was going over to my brother-in-law's and he said: 'No; I'm going down there and am going to

carry out the point I told Hambrick that I was, or I am going to hell before the sun goes down.' I then went and got on my wagon with my wife—I was as busy as I could be—and I went on and didn't have any further chat with him.''

Cross-examination:

''By Mr. Stone: Q. When was the first time that you ever told that to anybody? A. I didn't communicate with anybody at all except Mr. Hambrick.

''Q. When did you communicate it to Mr. Hambrick? A. If I make no mistake, it was Wednesday after the shooting scrape happenêd.''

The trial court ruled out this evidence over appellant's objection. It will be observed that the deceased said in that conversation that he expected trouble with appellant, and on being advised by Shirley not to go about appellant's wife, deceased replied:

''No; I'm going down there, and am going to carry out the point I told Hambrick that I was, or I am going to hell before the sun goes down.''

Clearly the evidence, if true, demonstrated that deceased harbored ill will against appellant, and to such an extent that if he failed to have his way in reference to the matter he had in mind he would either kill appellant or be killed. There is no other reasonable construction that could be put upon his language. This conversation between the witness Shirley and the deceased, however, was not communicated to appellant until after the homicide. Nevertheless, we hold that it was competent evidence in the case and should have been admitted. The rule in a case of this character is that where the evidence is conflicting as to who was the aggressor, recent threats of deceased against the accused, although not communicated to the latter, are admissible as tending to throw light on that question. It is admissible to show the mental attitude of the deceased toward the accused, whether he bore ill will toward him or not. Such evidence may have a very material bearing on the question

as to who was the aggressor in the difficulty resulting in the homicide. It is addressed to the state of mind of the deceased toward the accused as illustrating the conduct and acts of the former, and whether communicated to appellant before the homicide or not is admissible. *Johnson* v. *State,* 54 Miss. 430; *Kendrick* v. *State,* 55 Miss. 436; *Leverett* v. *State,* 112 Miss. 394, 73 So. 273. We are of opinion that, in the ruling out of this evidence, appellant was denied a substantial right.

There were other errors in the trial of the case which are not of sufficient gravity to cause a reversal, and are such errors as will probably not occur on another trial.

*Reversed and remanded.*