## Nelson *v.* State.

⌊92 South. 66.   No. 22243.⌋

1. JURY. *Court, on voir dire, should not indicate its views on de-fense of insanity.*

In a murder trial, where the defense is insanity, it is error for the court, on the *voir dire* examination of the jurors, to use any language which is calculated to disparage said defense. On such examination of the jurors, the court should so deport itself as that no juror can surmise the court's views of such defense.

2. JURY. *Conduct of the court in examining juror, on voir dire as to defense of insanity, held error.*

It is error in the trial court, on the *voir dire* examination of the jurors in such a case, to use this language: "Now, suppose that the evidence should show that the defendant was feeble-minded and not as bright as Woodrow Wilson or some other persons, and further that the defendant knew the difference between moral right and wrong, would you convict him, if the state had proved that he committed the crime regardless of his plea of insanity?" To this question the defendant then and there duly excepted, whereupon the court remarked: "We all have our right to our opinion about the matter." The court also used repeatedly the following language to the proposed jurors in speaking of the defense of insanity: "Now, suppose the defend-ant sets up insanity as a defense, and he has got a right to, if he wants to. He can interpose any defense he wants to. Will you consider this defense as you would any other?"

3. WITNESSES. *Permitting the district attorney to ask witness if he had bought liquor of the defendant on trial for murder held error.*

It was error for the court to permit the district attorney, on cross-examination of a witness for the defendant, to ask the witness if he had ever bought any intoxicating liquors from the defend-ant, because that fact, if proven, would be irrelevant to the issue of the guilt or innocence of the defendant on a charge of murder.

4. CRIMINAL LAW. *State's testimony that deceased asked officers for protection against defendant held inadmissible as hearsay and not res gestae.*

It was error for the court to admit testimony offered by the state
to the effect that, before the homicide, the deceased asked the
officers of the law to protect him against violence at the hands
of the defendant, because such statements by the deceased were
not part of the *res gestae*, but hearsay evidence, and come within
the rule against such evidence.

5. HOMICIDE. *Instruction on insanity held confusing and misleading.*
The court gave the following instruction for the state: "The court
instructs the jury for the state that you cannot acquit the de-
fendant on his plea of insanity, if you believe from the evidence
beyond a reasonable doubt that he killed the deceased without
authority of law, and with the deliberate intention of taking
his life, and at the time he knew that it was morally wrong so
to do, and this is true, even though you may further believe that
the defendant was insane and could not control himself and
was feeble-minded and was not like an ordinary man." *Held*,
that said instruction, if it embodies a correct statement of the
law, is so involved in the language as to be confusing and mis-
leading to the jury, for the jury might, on a casual reading,
come to the conclusion that the latter part of the charge is con-
tradictory of the first part.

6. HOMICIDE. *Instruction held erroneous as authorizing conviction,
without proof of necessary elements beyond a reasonable doubt.*
The court instructed the jury for the state as follows: "The court
instructs the jury for the state that, under the law, even if you
believe from the evidence in the case that the defendant was
feeble-minded and could not control himself, had poor judgment,
and was not as bright as other men, that it would be your duty
to convict him, if he knew the difference between moral right
and wrong, if he killed the deceased without authority of law
and with the deliberate intention of effecting his death." *Held*,
this instruction was erroneous, because it authorized a convic-
tion at the hands of the jury without the necessary elements of
the crime therein set forth, having been proven by the evidence
beyond a reasonable doubt.

7. HOMICIDE. *Instruction that, if jury found defendant insane, the
court must commit him to an insane asylum held error.*
It was error for the court to instruct the jury that, if they re-
turned a verdict of guilty of killing the deceased without au-
thority of law, but that, at the time, the defendant did not know
right from wrong, and that he had not been restored to reason
and was dangerous to the community, it would then be the

duty of the court to order the defendant confined to the insane asylum for treatment, until discharged by the authorities of that institution, because, under the law, the disposition which might be made of the defendant after reaching the insane asylum was not proper to be considered by the jury.

8. HOMICIDE. *Instruction as to defendant's knowing right from wrong is error, where not fixed as at the time of the alleged crime.*

It was error to give an instruction for the state that "insanity cannot be a defense to a criminal charge, if the defendant knows the difference between right and wrong;" because the word "'knows" refers to the present, and the law requires that the defendant know the difference between right and wrong at the time of the alleged crime.

9. CRIMINAL LAW. *Giving instruction just prior to jury's retiring without affording defendant's counsel opportunity to examine held error.*

It was error to give said last above instruction under the following circumstances: After all the evidence was in, and arguments on each side had been concluded and the jury was ready to retire and consider their verdict; said instruction, having been procured from the court by the district attorney and having been written out by him in long hand in the presence of the jury and handed to the court by him in their presence, and by the court marked "Given;" which instruction was thereupon immediately read to the jury, without having been submitted to counsel for the defendant and without giving defendant an opportunity to answer the same by procuring an explanatory instruction from the court.

APPEAL from circuit court, Lauderdale county.

HON. J. D. FATHEREE, Judge.

A. A. Nelson was convicted of murder and sentenced to life imprisonment, and he appeals. Reversed and remanded.

*H. T. Odom,* for appellant.

The second error complained of is the conduct of the trial judge. In the case of *Green* v. *State,* 53 So. 415, 97 Miss. 834, our court held it to be a matter of common knowledge that jurors as well as officers of the court are very susceptible to the influence of the judge. This court

will very probably take judicial notice that much prejudice exists among the laity against the defense of insanity to a charge of murder. This being true, the trial court should with the utmost care, guard its remarks and actions before the jury lest some statement creep into the records, which might disparage this defense in the eyes of the jury to the great prejudice of the defendant on the trial. *Collins* v. *State,* 99 Miss. 47, 54 So. 665; *Leverett* v. *State,* 112 Miss. 394, 73 So. 273.

The whole trend of the *voir dire* examination was to influence the proposed jurors against the defendant, and to strongly impress them with the idea that their duty was to convict. Such examination was erroneous, and very prejudicial to the defendant.

And here permit me to direct the court's attention to the fact that the trial court, in line with this *voir dire* examination referred to above, granted the following instruction for the state:

"4. The court instructs the jury for the state that under the law even if you believe from the evidence in the case that the defendant was feeble minded and could not control himself, was not as bright as other men, that it would be your duty to convict if he knew the difference between moral right and wrong, if he killed the deceased without authority of law and with the deliberate intention of effecting his death."

This instruction while not seemingly as strong as the question put to the jurors by the court on their *voir dire* examination, yet it reiterates the same idea, and serves to recall to the minds of the jury the prejudicial statements of the court at the beginning of the trial. Hence, the prejudicial effect of the *voir dire* examination was increased by this instruction, and I most seriously urge that the *voir dire* examination, together with this instruction on this point should cause a reversal of this case.

Under the third assignment of error I contend that the trial court admitted certain incompetent testimony, which was highly prejudicial to the appellant.

First, over the objection of appellant, court permitted
the district attorney to examine witnesses, Ira D. Hawkins,
as follows: "Q. Did you ever drink any wine he made?
A. I don't recollect whether I did or not. Q. Did you
ever drink any of the shinney he made? A. No, sir. Q.
You did not? A. No, sir." This line of examination is
highly improper, incompetent and calculated to prejudice
the jury against appellant.

Second, I complain of the following testimony of Mr.
Ed. Mosby: "Q. I will ask you whether or not on the
day that Ed Henson was killed, if he came to the justice of
the peace court, Mr. Clay's office, and asked for protection
against this man Nelson?"

In section 224, 13 R. C. L. under the title of homicide,
subtopic, conduct, condition and utterances of deceased, we
find the following general statement of the law: "What
he may have done or said at a time previous to the homi-
cidal act and unconnected therewith is too remote to be
considered. 21 Cyc., p. 931. Wharton on Criminal Evi-
dence (10 Ed.), par. 225.

Passing now to the fifth assignment of error, I shall en-
deavor to show that instructions 2, 3, 4, 6, 7 & 8 separately
and collectively granted for the state are so manifestly
erroneous and highly prejudicial to the rights of the ap-
pellant that the judgment herein must be reversed. Call-
ing to mind that all evidence in this case is circumstantial
and that the appellant relied on insanity as a defense, I
shall take up and discuss these instructions in numerical
order.

The second instruction for the state appears in these
words: "2. The court instructs the jury for the state
that you can not acquit the defendant on this plea of in-
sanity if you believe from the evidence beyond a reasonable
doubt that he killed the deceased without authority of law
and with the deliberate intention of taking his life and
at the time he knew that it was morally wrong so to do
and this is true, even though you may further believe that
the defendant was insane and could not control himself
and was feeble minded and was not like an ordinary man."

The announcement of the law in the first part of this in-
struction is apparently correct, but is clearly at right
angles with the statement in closing clause, which au-
thorizes and directs a conviction even though the jury
further believe that the defendant was insane and could
not control himself and was feeble minded and was not
like an ordinary man. It is certainly not the law in this
state or any other jurisdiction that an insane man is re-
sponsible to the law for his criminal acts. *Cunningham* v.
*State,* 56 Miss. 269; *Hampton* v. *State,* 99 Miss. 176, 54 So.
722.

And, second, the closing clause of this instruction is an
erroneous statement of the law in this: It warrants the jury
in convicting an insane man. *Cunningham* v. *State,* 56
Miss. 269; *Grissom* v. *State,* 62 Miss. 167; *Ford* v. *State,*
73 Miss. 734; 19 So. 665; *Bishop* v. *State,* 96 Miss. 846, 52
So. 21.

The appellant also assigns the giving of instruction No.
3 for the state as error. This instruction being as fol-
lows: "3. So highly and sacredly does the law regard
human life that it does not excuse or justify taking same
on a plea of insanity, except where the person taking life
does not know it is morally wrong to do so and in this
case you cannot acquit on a plea of insanity if you believe
from the evidence in the case beyond a reasonable doubt
that the defendant killed the deceased without authority
of law and with the deliberate intention of taking the de-
ceased's life at a time when he knew it was morally wrong
to do so."

This instruction it seems to me should not have been
given because it is couched in such terms as to arouse the
prejudice and passion of the jury.

Instruction No. 4, granted for the state appears to be
so clearly wrong that little argument is needed to show
that it is fatal error. It is as follows: "4. The court in-
structs the jury for the state that under the law even if
you believe from the evidence in the case that the defend-
ant was feeble minded and could not control himself, had

poor judgment and was not as bright as other men, that it would be your duty to convict him if he knew the difference between moral right and wrong, if he killed the deceased without authority of law and with the deliberate intention of effecting his death."

The first portion of this instruction ending with the words, "as bright as other men" is highly disparaging and prejudicial to appellant's defense of insanity, and especially in the light of the statements made to the jury by the trial court on their *voir dire* examination hereinbefore referred to and discussed.

The latter clause of this instruction tells the jury, that it is their duty to convict if he knew the difference between moral right and wrong, if he killed the deceased with the deliberate intention of effecting his death. Now, by this clause the jury is authorized to convict if he knew the difference between moral right and wrong. It does not require the jury to believe this from the evidence; it does not require them to believe this beyond a reasonable doubt.

This instruction is condemned by this court in speaking through Justice WHITFIELD in the case of *Gordon* v. *State,* 95 Miss. 543, 49 So. 609, where the case was reversed and remanded because the instruction did not require the jury to believe "from the evidence." The same holding is found in *Goodwin* v. *State,* 73 Miss. 873, 19 So. 712.

I shall now consider the sixth instruction granted for the state, which is in the following words, to wit: "6. The court instructs the jury that should you acquit the defendant because of insanity you may render one of the following verdicts: We the jury find that the defendant killed the deceased but we further find at the time he so killed the deceased, that he did not know the difference between moral right and wrong, and we further find that he has been restored to his reason and is not dangerous to the community.

"Or you may say: We the jury find the defendant guilty of killing the deceased without authority of law but find further that at the time, the defendant did not know right

from wrong, and that the defendant has not been restored to his reason and is dangerous to the community.

"It will then be the duty of the court to order the defendant confined in the insane asylum for treatment until discharged by the authorities of such institution."

This instruction was apparently drawn with section 1540 Code of 1906, section 1302 Hemingway's Code in mind and particularly the last two paragraphs, of this instruction which tell the jury that if they find the defendant guilty, but believe him insane now and at the time of the killing, that the court will order him confined in the insane asylum for treatment until discharged by the authorities of such institution. From this, the jury could infer but one thing; that if they sent appellant to the insane asylum, that the authorities would soon release him, and that he would be turned loose on the public again. The poisonous effect of this instruction is readily seen. And in the light of the record where testimony shows overwhelmingly that defendant is insane, if human testimony is to be believed, the conclusion is inescapable that the jury determined to protect the public against further harm at the hands of the appellant by placing him in the penitentiary where he would not be released after a short period of treatment, as this instruction indicated would be the case if they found him not guilty on the ground of insanity. That this instruction is an erroneous statement of the law cannot be successfully denied, for the statute plainly says that in such a case, "the judges shall order him to be conveyed to and confined in one of the state asylums for the insane Section 1540, Code 1906.

I now pass to the consideration of the last instruction granted for the state, and numbered 8, which appears in the following words: "8. Insanity cannot be a defense to a criminal charge if the defendant knows the difference between moral right and wrong." While this instruction covers less than two type written lines, it is my contention that the giving of it alone is sufficient to cause a reversal

of this case. It is manifestly subject to criticism and highly objectionable for many reasons, to wit:

First, it is only an abstract proposition of the law, which on account of its vagueness and indefiniteness is calculated to confuse and mislead the jury. *Smith* v. *State*, 23 So. 263; *Barnes* v. *State* — Miss. —, 79 So. 815.

In the second place this instruction tells the jury that insanity is no defense if the defendant knows the difference between moral right and wrong. Under this charge the defendant might have known the difference between moral right and wrong at the time of the trial, and if so he would have been deprived of the defense of insanity, even though he had not known the difference between moral right and wrong at the time and under the circumstances of the alleged crime, which would have been a complete defense to this case. I cite the Cunningham, Grissom, Ford and Bishop cases already referred to in support of this contention. *Goodwin* v. *State*, 73 Miss. 873, 10 So. 712; Also *Gordon* v. *State*, 95 Miss. 543, 49 So. 609.

A further and fourth objection to this instruction is that a reasonable doubt as to appellant's insanity may arise from lack of testimony on this subject. This doctrine is fully stated by our court in the following cases: *Herman* v. *State*, 75 Miss. 340, 22 So. 873; *Thompson* v. *State*, 83 Miss. 287, 35 So. 689; *Mathis* v. *State*, 80 Miss. 491, 32 So. 6; *Howell* v. *State*, 98 Miss. 439, 53 So. 954; *Gordon* v. *State*, 95 Miss. 543, 49 So. 609.

### Conclusion.

If my contention is right in regard to the various assignments of error, it seems to me that it necessarily follows that this case must be reversed. The errors complained of by appellant in this case began with the trial court's overruling appellant's motion for continuance. This was followed by manifest errors in qualifying the jury on their *voir dire* examination. During the trial, certain evidence was admitted over the objection of the appellant that was highly prejudicial to the rights of the accused. Out of

eight instructions granted for the state, all except two were manifestly erroneous and no doubt, had their influence on the jury. In the light of the record, if we call to mind other errors committed on the trial of this case, the evil influence, of the instructions granted for the state is apparent. Again, as argued in this brief, a casual examination of the instructions granted for the state is apparent. Again, as argued in this brief, a casual examination of instructions granted for both will disclose the fact that the instructions are in hopeless conflict. Then it appears to me that there is a very serious doubt as to whether or not the state met the burden of proof as regards the guilt of the appellant, but disregarding this feature of the case altogether, the evidence as to appellant's mental condition is so apparent and shows so conclusive that appellant was insane at the time of the alleged crime, that we must conclude that the jury not only failed to follow the instructions granted by the court in behalf of appellant, but also disregarded and ignored the evidence touching appellant's insanity and inability to determine moral right from wrong.

I therefore, respectfully submit that on account of the numerous and manifest errors that appear in this record that appellant is entitled to reversal in this case, and most earnestly urge the merits of this appeal.

*Frank Roberson,* attorney-general for state.

The next assignment is as to qualifying the jury on their *voir dire* examination. As to the special bill of exceptions on page 170, the language of the court therein used, while not couched possibly in the language that should have been used, nevertheless states the law, in that emphasis is given to the ability of distinguishing between right and wrong. The statement of the court on page 171 concluding with the sentence: "Will you consider this defense as you would any other?," was a proper question, it being the duty of the jury to pass upon the sanity or insanity of the defendant.

The instruction given after the arguments were concluded clearly states the law and aided the jury in arriving at a proper verdict and could not have been prejudicial to any of his rights. Counsel has referred to all of the cases which have any bearing on this point. If this instruction was erroneous and does not properly state the law and is so serious as to be prejudicial, then its giving would be a reversible error at any time, but if it correctly states the law and the jury could not be misled, it would not be grounds for a reversal. It is not in conflict with instruction No. 5 for the defense, nor with instruction No. 12. It also harmonizes with instruction No. 13.

The question of proof beyond a reasonable doubt is submitted in all the other instructions where sanity is brought into question. Instruction No. 12 for the defense uses the words, "totally or only partially insane." Instruction No. 8 for the state simply means that where he is totally or only partially insane, he must know the differences between moral right and wrong. As to instruction No. 2, it is not contradictory in its terms, it simply means that if at any time the defendant knew it was morally wrong to take a human life, even though classified as insane, that he must pay the penalty. 1 Bish. New Crim. Law (8 Ed.), sec. 390; *Parsons* v. *State,* 81 Ala. 577, 2 So. 864, 60 Am. Rep. 193; *Smith* v. *State,* 27 L. R. A. (N. S.) 461.

The motive in this case which might have produced a bad condition of the mind was the idea that the deceased was attempting to induce the wife of the appellant to leave the appellant. See also in this connection *Haley* v. *State,* 85 So. 129, 123 Miss. 87.

These cases go either to the diminution of the crime or the modification of the punishment. This must have been taken into consideration by the jury for they fixed his punishment at life imprisonment. This view harmonizes all of the instructions because it brings before the court the fact that the law recognizes that a person may be in-

sane and yet responsible, in that he is still able to distinguish between moral right and wrong.

The objection to instruction No. 3, it is respectfully submitted, is not serious as it announces the same principles of law and also announces that which is a fact and has always been a fact and, it is hoped, will always be a fact and it uses the following language: "So highly and so sacredly does the law regard human life." It is also limited by the statement of the ability to know what is morally wrong.

Instruction No. 4 is answered by the same reasoning as for the previous instructions. An insane person, of course, could not be charged with the deliberate intention of effecting his death, unless he was able to think and to decide and knew the distinction. between moral right and wrong. The expression of this instruction: "was not as bright as other men," is almost the same as that contained in instruction No. 5 for the defendant, "that the accused was mentally balanced and had sufficient mind to fully appreciate the diffrence between moral right and wrong as compared with a sane and normal man." As to whether this instruction had the words, "beyond a reasonable doubt" inserted is to be answered in the terms of the statement of the court on page 2 of 2nd volume of the special bill of exceptions. This instruction at last, must be submitted to the test of whether or not it is prejudicial error and misled the jury.

Instruction No. 6 is a statement of the law. The last part of the instruction which is objected to by appellant, "until discharged by the authorities of such institution," might mean discharged from treatment, at which time the courts would begin to assume jurisdiction. This is mere conjecture, as is the contention of the appellant. The question is: was there sufficient evidence on which to convict? And did the jury in convicting him and fixing his imprisonment for life, act in an unjustifiable manner?

The objections to all the other instructions, except the objection to instruction No. 8 which has been covered, are

accessible to the court and are taken care of in the reasoning applicable to the other instructions. You will note further that as to this instruction No. 8, that the defendant did not ask for any time to argue the instruction or to consider it.

A reading of instructions "A" and "B" will suffice to show the court that they were properly refused. It is difficult to understand how "a reasonable doubt may exist although there is no probability of the defendant's innocence from the testimony, unless the jury have an abiding conviction beyond every reasonable doubt." The court will especially note that there is no defense offered by any evidence anywhere, except as to the sanity, or rather insanity.

If the state's case is sufficient to convict, then the only other question is as to the insanity of the defendant of so grave a nature as to prevent him from distinguishing between moral right and wrong.

Instruction "B" is in effect the "two theories" case and is contained in: *Roux* v. *Gulfport,* 97 Miss. 559, 52 So. 485; *Saucier* v. *State,* 102 Miss. 647, 59 So. 858.

As there was no conflict in the evidence as to the sanity then a peremptory instruction for the defendant was properly refused.

The objection as to the misconduct of the jury is not tenable unless some corruption is shown. See *Haley* v. *State, supra* and authorities therein cited.

Anderson, J., delivered the opinion of the court.

Appellant, A. A. Nelson, was indicted and convicted in the circuit court of Lauderdale county of murdering his father-in-law, Ed Henson, the jury fixing his punishment at imprisonment in the penitentiary for life, which was accordingly imposed by the court, from which judgment he prosecutes this appeal.

About 7 o'clock on the evening of March 4, 1921, the deceased, Henson, while sitting in his room near one of the windows therein, was shot to death by means of a shot-

gun in the hands of some person standing on the outside near the window. He died instantly, and therefore made no dying statement. There were no eyewitnesses to the homicide. To convict, the state relied alone on circumstantial evidence to identify the appellant as the person who did the shooting.

Appellant's defense on the trial in the court below was, first, that the evidence did not sufficiently identify him as the person who did the killing, and second, that, if it did so identify him, he was insane at the time to the extent that he was incapable of committing the crime with which he was charged. The appellant made no confession or admission tending to show his guilt. At the time of the homicide, the appellant was more than 60 years of age. About two weeks prior thereto he had married the 17 year old daughter of the deceased, the deceased procuring the license therefor. Appellant and his wife lived together only about one week, when she left him.

The evidence relied on by the state, as identifying appellant as the person who committed the homicide, is substantially as follows: Shortly before the killing, probably the day before, appellant threatened to kill the deceased because he said the deceased had persuaded his wife to leave him. On the afternoon of the night of the killing, appellant was seen at the gate of his own home with a gun in his possession. Soon after the homicide, appellant was arrested by the officers on the theory that he was the guilty person. When arrested he acted "suspiciously." There were tracks of some person near the window of the home of the deceased where the person who did the shooting is supposed to have stood. Appellant's shoes were taken and fitted into these tracks, and corresponded with the same. And, on the day following the homicide, the appellant's shotgun was found between the mattress and the featherbed on the bed occupied by him, and appeared to have been recently fired.

On the issue of insanity, the evidence was substantially as follows: In 1907 the appellant was declared insane

in the manner prescribed by law, and committed to the East Mississippi Insane Asylum, and there remained for some time, and then made his escape. He had never been discharged from the asylum, nor had he ever been recaptured and returned. Dr. Robinson, who had been the appellant's family physician for more than 10 years, and who had made a special study of mental and nervous diseases, testified that appellant's mental state was the result of pellagra, which left his mind seriously impaired; that, in his judgment, the appellant was not capable of comprehending the difference between right and wrong. Many of appellant's neighbors, who were intimately acquainted with him and had had ample opportunity of observing his mental processes and conduct, testified that, in their opinion, he was not at the time of the homicide, nor had he been for some years, mentally capable of understanding the difference between right and wrong. The only evidence to the contrary was that of Dr. Buchanan, Dr. Cleveland, the jailer, a sister of the deceased, and one Smith. Drs. Buchanan and Cleveland qualified as mental experts. They testified that the appellant was mentally weak, but, in their opinion, had sufficient mind to understand the difference between right and wrong. The other witnesses for the state testified that, in their judgment, appellant knew right from wrong, but admitted that he was weak-minded.

It will be observed that, especially on the issue of the sanity of the appellant, the state did not make out a strong case. And furthermore, on the question of whether appellant was sufficiently identified by the evidence as the person who committed the homicide, reasonable minds might differ, under the requirement of the law that such identification had to be shown beyond a reasonable doubt. In that sort of a case the court below should have most diligently guarded against the commission of errors unfavorable to appellant, and especially harmful errors.

Appellant assigns as error certain language of the trial judge on the *voir dire* examination of the jurors in the

presence of other jurors. The language of the court objected to is set forth in a special bill of exceptions which is in this language:

"'Now, suppose that the evidence should show that the defendant was feeble-minded and not as bright as Woodrow Wilson or some other persons, and further that the defendant knew the difference between moral right and wrong; would you convict him, if the state had proven that he committed the crime, regardless of his plea of insanity?' To this question the defendant then and there duly excepted, whereupon the court remarked: 'We all have our right to our opinion about the matter.' The court also used repeatedly the following language to the proposed jurors in speaking of the defense of insanity: 'Now, suppose the defendant sets up insanity as a defense, and he has got a right to, if he wants to. He can interpose any defense he wants to. Will you consider this defense as you would any other?'"

It is contended that, in view of appellant's defense of insanity, this language of the court was very prejudicial to such defense. *Montgomery* v. *State,* 85 Miss. 330, 37 So. 835; *Green* v. *State,* 97 Miss. 834, 53 So. 415; *Collins* v. *State,* 99 Miss. 47, 54 So. 665, Ann. Cas. 1913C, 1256; and *Leverett* v. *State,* 112 Miss. 394, 73 So. 273, are relied on to sustain that contention. In *Montgomery* v. *State, supra,* in discussing as to how the conduct of the trial judge should be characterized during the trial, the court, among other things, said: "A court should so deport itself as that no juror or bystander can surmise its view of the facts, It is an unbiased jury alone which should pass on the facts."

In *Green* v. *State, supra,* the court said: "It is a matter of common knowledge that jurors, as well as officers in attendance upon court, are very susceptible to the influence of the judge. The sheriff and his deputies, as a rule, are anxious to do his bidding; and jurors watch closely his conduct, and give attention to his language, that they may, if possible, ascertain his leaning to one side or the other, which, if known, often largely influences their verdict. He

cannot be too careful and guarded in language and con-
duct in the presence of the jury, to avoid prejudice to either
party."

And, in *Leverett* v. *State, supra,* the court, is discussing
the same question of the conduct of the trial judge, said:
"The court undoubtedly anticipated that evidence would be
introduced showing the illicit relations between the dece-
dent and appellant's wife, and was attempting to forestall
any attempt on the part of appellant to plead the so-called
'unwritten law.' The evidence, however, offered by the ap-
pellant, with reference to the illicit relations between his
wife and the decedent, and the controversy and threats
growing out of the same, was a material part of his case,
and served a legitimate purpose as corroborative of the
appellant's version of the affair in so far only, of course,
as it shed light on who was the aggressor. Evidently the
judge, in questioning the jurors about whether or not they
would be controlled by 'sentiment,' anticipated this very
testimony, and, by his questions, greatly disparaged this
evidence. The effect of such questions on the minds of
the jurors was as effective as if the judge had said, in so
many words: 'The self-defense story in this case is "trump-
ed-up." The defendant is trying by this means to plead
the unwritten law.' The whole trend of the *voir dire* ex-
amination was to influence the proposed jurors against
the defendant, and to strongly impress them with the idea
that their duty was to convict. Each juror was given to
understand that he would be a man of very little moral
courage unless he found a verdict of guilty in this case.
Such examination was erroneous, and very prejudicial to
the defendant."

The language in question of the trial judge on the *voir
dire* examination of the jurors, we think was most preju-
dicial to appellant's defense of insanity. Especially is
this true of that part of the examination in which the
judge uses this language, "not as bright as Woodrow Wil-
son, or some other persons," and the language, "regardless
of his plea of insanity." And the response of the court,

when appellant's counsel objected to the language of the court, in which he said: "We all have our right to our opinion about the matter." And the language, "Now, suppose the defendant sets up insanity as a defense, and he has got a right to, if he wants to. He can interpose any defense he wants to." We think this language, although of course not so intended by the court, must have been most damaging to appellant's defense of insanity. It tended to belittle the defense and bring it into contempt. The trial · judge, in his ardour to enforce the criminal laws, over-- stepped the proper bounds. It is no more however than good judges have done before.

Appellant assigns as error the action of the court in admitting certain evidence of the witness·I. D. Hawkins, over the objection of appellant. The witness Hawkins was put on the stand by appellant and was a very material witness in his favor on the question of appellant's sanity. On cross-examination, the district attorney, over the objection of appellant, was permitted to examine the witness as follows: "Q. Did you ever drink any wine he made? A. I don't recollect whether I did or not. Q. Did you ever drink any of the shinney he made? A. No, sir. Q. You did not? A. No, sir."

The evident purpose of the district attorney was to convey the idea to the jury that appellant had been engaged in the unlawful manufacture and sale of intoxicating liquors. If that were true it had absolutely no bearing on the guilt or innocence of appellant of the crime with which he was charged. This evidence was calculated to prejudice appellant's defense, although the witness denied that he had bought any wine or whisky from the appellant, for the jury might have inferred nevertheless that he had, and the district attorney knew it, but was unable to prove it. An illicit liquor dealer would not have much show with a plea of insanity before the ordinary jury.

Appellant assigns as error the action of the court in permitting the district attorney to prove by the witness Mosby, over the objection of appellant, that, on either the after-

noon deceased was killed or the day before, the deceased came to the office of Clay, a justice of the peace, and asked for protection against violence at the hands of appellant. This evidence was objected to on the ground that it was hearsay. What the deceased may have said or done at a time previous to the homicide and unconnected therewith is too remote. Such statements cannot be proved by hearsay, unless they were a part of the *res gestae.* Therefore all declarations by a decedent before his homicide that he had been threatened, or expected violence at the hands of the defendant charged with his murder, are inadmissible. 13 R. C. L. section 224, p. 921; 21 Cyc. 931; Wharton on Criminal Evidence (10th Ed.) par. 225. They are simply hearsay evidence and come within the rule against such evidence.

The action of the court in giving instruction No. 2 for the state is assigned as error. That instruction is in this language: "The court instructs the jury for the state that you cannot acquit the defendant on his plea of insanity, if you believe from the evidence beyond a reasonable doubt that he killed the deceased without authority of law and with the deliberate intention of taking his life and at the time he knew that it was morally wrong so to do, and this is true, *even though you may further believe that the defendant was insane and could not control himself and was feeble-minded and was not like an ordinary man."*

This instruction, down to the word "true," correctly states the law. The criticism of the instruction is addressed to the last clause, beginning after the word "true" in this language, "even though you may further believe that the defendant was insane and could not control himself and was feebleminded and was not like an ordinary man." The argument is that these two divisions of the instruction are directly conflicting with each other; that the first division, although it correctly states the law, is nullified by the last division of the instruction. The language of the second division is so involved and complicated that it is hard to say whether appellant's criticism of it

is well founded or not. In order to determine that question, it would be necessary to carefully parse out the language of the entire charge. The ordinary juror should not be required to do this. Perhaps the trained legal mind could demonstrate that, according to the proper meaning of this instruction, it is not subject to the fault claimed. However, it is plain that, on a casual reading of the instruction, the two divisions referred to appear to be conflicting and confusing. It should not have been given in that form.

The giving of instruction No. 4 for the state is assigned as error by the appellant, which follows: "The court instructs the jury for the state that, under the law, even if you believe from the evidence in the case that the defendant was feeble-minded and could not control himself, had poor judgment, and was not as bright as other men, that it would be your duty to convict him if he knew the difference between moral right and wrong, if he killed the deceased without authority of law and with the deliberate intention of effecting his death."

The giving of this instruction was error, for the following reasons: The jury were charged that they should convict the defendant if he knew the difference between right and wrong, and if he killed deceased without authority of law and with deliberate design to effect his death. They were not instructed, as they should have been, that it was necessary that this be shown by the evidence, and also beyond all reasonable doubt. The instruction should have been so qualified. In other words, the instruction authorized a conviction without showing the existence of the necessary elements of the crime by evidence beyond a reasonable doubt. *Gordon* v. *State,* 95 Miss. 543, 49 So. 609; *Goodwin* v. *State,* 73 Miss. 873, 19 So. 712.

The giving of the sixth instruction for the state is assigned as error. That instruction is in this language:

"6.   The court instructs the jury that, should you acquit the defendant because of insanity, you may render one of the following verdicts: We, the jury, find that the defendant killed the deceased, but we further find that the time

he so killed the deceased, that he did not know the difference between moral right and wrong, and we further find that he has been restored to his reason and is not dangerous to the community.

"Or you may say: We, the jury, find the defendant guilty of killing the deceased without authority of law, but find further that, at the time, the defendant did not know right from wrong, and that the defendant has not been restored to his reason and is dangerous to the community.

"It will then be the duty of the court to order the defendant confined in the insane asylum for treatment until discharged by the authorities of such institution."

The principal criticism is addressed to the last two paragraphs of the instructions, which, in substance, told the jury that, if they acquitted the defendant on the ground of insanity, and found that his reason had not been restored, and he was dangerous to the community, it would then be the duty of the court to order him confined in the insane asylum for treatment, until discharged by the authorities of such institution. It is argued that the jury could infer but one thing from the latter part of this instruction, and that was that, if they acquitted appellant on the ground of insanity, and found that his mind had not been restored at the time of the trial, and that he was dangerous, he would be sent to the insane asylum and there the authorities would soon discharge him, and he would against be a free man. It is sufficient to say that the jury had nothing to do with the result of such a finding, and therefore the instruction should not have been given in that form.

The giving of the eighth instruction for the state is assigned by the appellant as error. It is in this language: "Insanity cannot be a defense to a criminal charge if the defendant knows the difference between right and wrong."

This instruction was erroneous, because it told the jury that insanity was not a defense in a criminal case, "if the defendant *knows* the difference between right and wrong." (Italics ours) The word "knows" refers to the present

and not to the past.   Under the law, appellant must have known the difference between right and wrong *at the time of the alleged crime.*   The manner of the giving of this instruction is also assigned as error.   It is shown, by a special bill of exceptions, which is in this language:

"Be it remembered that, on the trial of the above cause, after all arguments were concluded and the case closed and the jury ready to retire and consider their verdict, that the district attorney, prosecuting for the state of Mississippi, procured from the court and read to the jury an additional instruction numbered 8, and in the following words: 'Insanity cannot be a defense to a criminal charge if the defendant knows the difference between moral right and wrong.'   That said instruction was written in long hand by the district attorney, in the presence of the jury, and handed to the court in their presence, and marked 'Given' by the court in the presence of the jury; that said instruction was not submitted to the attorney for the defendant but immediately read to the jury, and without giving defendant an opportunity to answer same, the defendant not asking for any time, the jury were instructed by the court to retire and consider their verdict."

It will be seen that this instruction was given after the arguments on both sides had been concluded, and the jury were ready to retire and consider their verdict.   If possible, the giving of an instruction, under the circumstances the one here was given, should be avoided; but an .erroneous instruction given under such circumstances could hardly be said to be without prejudice.   The giving of this instruction under the conditions named simply meant this:   That the trial judge, notwithstanding he had heard the whole case, including the arguments, and had instructed the jury fully, desired to say one more thing to the jury, and that was that insanity is no defense "if the defendant knows the difference between right and wrong."   The jury might have thought:   "Well, that last instruction must just be the sum and substance of all of them."   The giving of an erroneous instruction under such circumstances had been

condemned by this court in several cases. *Montgomery* v.
*State,* 85 Miss. 330, 37 So. 385; *Boykin* v. *State,* 86 Miss.
481, 38 So. 725; *King* v. *State,* 121 Miss. 230, 83 So. 164;
*Davenport* v. *State,* 121 Miss. 548, 83 So. 738.

We do not mean to be understood as holding that each
of the errors committed by the court is a reversible error.
We simply hold that, under the facts of this case, consider-.
ing the errors committed all together, it is clear that ap-
pellant should have another trial.

*Reversed and remanded.*