198 So.2d 220 (1967)
Will Allen SMITH
v.
STATE of Mississippi.
No. 44322.
Supreme Court of Mississippi.
April 24, 1967.
Suggestion of Error Overruled May 22, 1967.
*221 Prewitt, Bullard & Braddock, Vicksburg, for appellant.
Joe T. Patterson, Atty. Gen., by Guy N. Rogers, Asst. Atty. Gen., Jackson, for appellee.
INZER, Justice.
Appellant, Will Allen Smith, was indicted, tried and convicted of the crime of murder in the Circuit Court of Warren County. He was sentenced to serve a life sentence in the state penitentiary. From this sentence he appeals to this Court. We reverse and remand for a new trial because of an erroneous instruction.
The evidence in this case establishes that at about 2:30 p.m. on June 10, 1965, appellant shot and killed Mildred Mae Glidewell. Mrs. Glidewell was a waitress in a cafe known as "Eat-A-Minute" in Vicksburg. *222 Appellant and Mrs. Glidewell were on very friendly terms. In fact, it appears that they had planned to be married when she obtained a divorce from her husband. Appellant has secured the services of an attorney to represent her in such an action.
A short time before appellant shot and killed Mrs. Glidewell, he went to the cafe where she was working. Charles Pettway a friend of his, was in the cafe when appellant entered. They had a Coca-Cola together, and then walked outside the cafe. After a brief conversation with his friend, appellant went back into the cafe for a short time. He came back out, and talked with Pettway for a time. He then reached into his car, which was parked in front of the cafe, and removed therefrom a paper bag. He hurried back into the cafe. After entering, appellant removed a pistol from the bag and said, "Mildred, I hate to do this." He then shot Mrs. Glidewell five or six times. Appellant left the cafe and drove to the Warren County Courthouse, where he was arrested. After his arrest he made some statements to Chief of Police Sills. Appellant was having difficulty breathing, and was upset and crying. Sills asked him if he had talked with a lawyer, and Sills said that appellant stated to him, "that he did not want to talk to a lawyer, that he wanted us to take him and put him in the electric chair."
After further questioning Chief Sills became concerned about appellant's physical condition and caused him to be taken to a Vicksburg hospital where he was examined and observed by Dr. Karl Hatten. Dr. Hatten did not find anything physically wrong with appellant, but was of the opinion that he should have a psychiatric examination. Dr. Hatten tried to make arrangements to send appellant to the hospital at Whitfield, but when the hospital authorities discovered that he was charged with a criminal offense they would not accept him without a court order. Appellant was then lodged in jail where he remained until he was tried.
Appellant's defense was insanity. In support of that defense he introduced the testimony of two phychiatrists. They were Dr. Charles Rodney Smith and Dr. Andrew John Sanchez, Jr., both of whom practice their profession in the city of New Orleans, Louisiana.
Dr. Smith examined appellant on four separate occasions, and testified that in his opinion appellant was suffering from a major, medical psychiatric disorder which be labeled as a chronic, undifferentiated, type of schizophrenia. He was of the opinion that because of this disorder, at the time of the killing appellant was not capable of distinguishing right from wrong. He was also of the opinion that because of this condition appellant was a menace to society and should be confined to a mental institution.
Dr. Sanchez examined appellant on two occasions, and it was his opinion that the appellant was suffering from a major medical disorder which he diagnosed as schizophrenia chronic undifferentiated type, and because of this disease appellant was unable to distinguish right from wrong at the time he killed Mrs. Glidewell. He also thought appellant's condition was such that he was a menace to society, and that he should be confined to a mental institution. The State did not offer any expert medical proof, but relied upon lay testimony to prove that appellant was sane. This evidence was sufficient to make it a question for the jury to determine whether the State had met the burden of proving beyond a reasonable doubt that appellant could distinguish right from wrong at the time he shot and killed Mrs. Glidewell.
Before we discuss the erroneous instruction, there is one other error assigned by appellant which should be noticed. Appellant urges that the trial court was in error in failing to sustain appellant's plea of former jeopardy. He was indicted at the July 1965 term of court and his trial was set for July 19, 1965. On this date all the jurors were selected except an alternate juror. On the following day, after the alternate juror had been selected and before any evidence had been introduced, the state *223 made a motion for a mistrial. The basis of this motion was that one of the bailiffs assigned to take care of the jury had overheard one of the jurors express an opinion that the appellant was insane. The trial court conducted a hearing on the motion, and after taking testimony, sustained the motion for a new trial. Prior to the trial at the next term of court appellant filed a plea of former jeopardy.
Mississippi Constitution article 3, section 22 provides:
No person's life or liberty shall be twice placed in jeopardy for the same offense; but there must be an actual acquittal or conviction on the merits to bar another prosecution.
We have held in a number of cases that there must be an actual conviction or acquittal on the merits to support the plea of former jeopardy. Harris v. State, 158 Miss. 439, 130 So. 697 (1930); Lovern v. State, 140 Miss. 635, 105 So. 759 (1925); Conwill v. State, 124 Miss. 716, 86 So. 876 (1920).
The trial court has the power and the duty to order a mistrial in case of legal necessity for so doing. It is clear from the testimony developed in the hearing that the trial judge was justified in sustaining a motion for a new trial. It was in the interest of justice that he do so.
However, appellant urges that the action of the trial court in sustaining the motion of the State for mistrial denied appellant due process by virtue of the provisions of the fourteenth amendment of the United States Constitution. We find no merit in this contention. In Brock v. State of North Carolina, 344 U.S. 424, 73 S.Ct. 349, 97 L.Ed. 456 (1952), the Supreme Court of the United States said in upholding a North Carolina decision which overruled a plea of former jeopardy that:
The question before us is whether the requirement that the defendant shall be presented for trial before a second jury for the same offense violates due process of law as required of the State under the Fourteenth Amendment. The question has been here before under different circumstances. In Palko v. State of Connecticut, supra [302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288], the defendant was first tried for murder in the first degree and was found guilty of murder in the second degree. Pursuant to a statute of Connecticut, the State appealed and obtained a reversal for errors of law at the trial. The defendant was retried, convicted of murder in the first degree, and sentenced to death. An appeal of this Court raised the question whether or not the requirement that he stand trial a second time for the same offense placed him twice in jeopardy, in violation of due process.
This Court held that the State had not denied the defendant due process of law. In order to indicate the nature of due process, this Court asked two questions: "Is that kind of double jeopardy to which the statute has subjected him a hardship so acute and shocking that our polity will not endure it? Does it violate those `fundamental principles of liberty and justice which lie at the base of all our civil and political institutions'? * * * The answer surely must be `no.'" 302 U.S. 319, 328, 58 S.Ct. [149], 153, 82 L.Ed. 288, 293.
Here the answer must be the same.
This Court has long favored the rule of discretion in the trial judge to declare a mistrial and to require another panel to try the defendant if the ends of justice will be best served. Wade v. Hunter, 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974. Thompson v. United States, 155 U.S. 271, 273, 274, 15 S.Ct. 73, 39 L.Ed. 146, 148, 149. As was said in Wade v. Hunter, supra, 336 U.S. at page 690, 69 S.Ct. at page 638, 93 L.Ed. 974, "a trial can be discontinued when particular circumstances manifest a necessity for so doing, and when failure to discontinue would defeat the ends of justice." Justice *224 to either or both parties may indicate to the wise discretion of the trial judge that he declare a mistrial and require the defendant to stand trial before another jury. As in all cases involving what is or is not due process, so in this case, no hard and fast rule can be laid down. The pattern of due process is picked out in the facts and circumstances of each case. The pattern here, long in use in North Carolina, does not deny the fundamental essentials of a trial, "the very essence of a scheme or ordered justice," which is due process.
The action of the trial court in declaring the mistrial did not subject appellant to any greater hardship than he would have incurred had this trial been declared a mistrial because of the failure of the jury to agree. No one would seriously urge that a mistrial granted for this reason would be the basis for a plea of former jeopardy. Neither does the granting of the mistrial violate fundamental principles of liberty and justice. Our system of jurisprudence envisions a trial by a fair and impartial jury, unhampered by preconceived fixed opinions or notions as to the guilt or innocence of the accused. Although it is sometimes overlooked, the state is entitled to the right to have a case tried by a jury that is unhampered by a preconceived opinion of notion that the person charged is innocent. In order that a fair and impartial trial may be had, the trial court should be and is given the right to declare a mistrial when it is made known in a proper manner that the person charged or the state will not have the benefit of such a jury. We find no merit in appellant's contention that his constitutional right was violated by this action of the trial court.
Appellant urges that the trial court was in error in granting the following instruction:
The court instructs the jury for the State of Mississippi that the defense of so called moral or emotional insanity or irrestible (sic) impulse, where the defendant's mental power to distinguish between moral right and wrong with respect to the act for which he is indicted remains unimpaired, is not recognized by the law of this state, and you are accordingly instructed that you have no right to regard any such insanity as a legal excuse for crime. If the defendant commits a crime under an uncontrollable impulse resulting from mental disease, and which, at the time and place of the alleged crime exists to such a high degree that for the time it overwhelms his reason, judgment and conscience, and his power to properly perceive the difference between the moral right and wrong of the alleged criminal act, this would, of course, be a legal defense and excuse for such an act. But where the defendant at the time of an alleged crime, is sane to the degree that he can properly perceive the difference between moral right and wrong with respect to the particular act, and knows that it is morally wrong for him to do the said act, then the mere fact that an alleged irrestible (sic) or emotional impulse constrained him to commit the act which he then properly perceived was morally wrong will not, and cannot, amount to a defense for the crime charged against him, and you are so instructed. If, therefore, you find from the evidence beyond a reasonable doubt that at the time and place of the alleged killing of Mildred Mae Glidewell by the Defendant, Will Allen Smith, that the said defendant was not insane to the degree of disqualifying him from a proper perception of the difference between moral right and wrong with respect to the alleged act of killing, but had the unimpaired use of his mind to the extent that he knew that the alleged act of killing the said Mildred Mae Glidewell at the time and place in question was a moral wrong, then any alleged impulse or emotion prompting the defendant to do the act would not, of itself, amount to such mental insanity as would warrant the jury in acquitting the defendant upon the defense of alleged insanity; and, in *225 such a case, any verdict of not guilty by reason of insanity returned by the jury would be improper and entirely unwarranted.
Appellant argues that there was no evidence in this case upon which this instruction could be based. There is merit in this contention. Appellant's defense was that he was insane at the time of the killing, and he offered testimony to support this defense. It was his contention that he was suffering from a mental disorder of such nature as to destroy his ability to distinguish right from wrong. The issue for determination by the jury was whether the appellant was at the time of the killing insane to the extent that he was unable to know and distinguish right from wrong. No one testified that the appellant acted from an irresistible impulse. We think it was prejudicial error to grant the instruction under the facts of this case. Especially is this true in view of the fact that there is a close question of whether the state met the burden that the law placed upon it to prove beyond a reasonable doubt that appellant had at the time of the killing sufficient mental capacity to know right from wrong.
Furthermore, this instruction is so involved and complicated that it is extremely difficult to understand. It is doubtful that an ordinary intelligent juror would be able to understand its meaning. It is, as has been said by this Court in reference to other instructions, "entirely too smart." Its conclusion is such that if the juror did not clearly understand the instruction he could well reach the conclusion that the defense of insanity, although established by the evidence, was not a valid defense. We think this instruction under the facts of this case was reversible error.
We do not deem it necessary to pass upon the assignment of error relative to the alleged improper argument to the jury by the county attorney, for the reason that this alleged error should not recur on another trial.
For the reasons stated, this case is reversed and remanded for a new trial.
Reversed and remanded.
ETHRIDGE, C.J., and JONES, BRADY and ROBERTSON, JJ., concur.