220 So.2d 313 (1969)
Will Allen SMITH
v.
STATE of Mississippi.
No. 45213.
Supreme Court of Mississippi.
March 3, 1969.
Rehearing Denied March 31, 1969.
*314 Prewitt, Bullard, Braddock & Vance, Vicksburg, for appellant.
Joe T. Patterson, Atty. Gen., by Guy N. Rogers, Asst. Atty. Gen., Jackson, for appellee.
PATTERSON, Justice.
Appellant, Will Allen Smith, was indicted, tried, and convicted of the crime of murder in the Circuit Court of Warren County. He was sentenced to the state penitentiary for life. From that sentence he appeals to this Court.
We reverse and remand the case for a new trial as we are convinced the statements of the district attorney, when connected with an erroneous instruction during the argument of the case, were unnecessary, indefensible and not in rapport with minimum requirements for the conduct of so serious a matter as the trial of one for murder.
It is regrettable that the case must again be reversed as the termination of a suit has important aspects to the litigants, to the courts, and to the interests of society as a whole. These aspects, however, must be balanced with the fundamental right of every defendant to a fair and impartial trial. The defendant committed an unpardonable act, the commission of which is not denied other than by the appellant's plea of insanity, which is to state that he did not know the difference between right and wrong at the time it was committed. From antiquity civilized societies have recognized that in order to hold any person responsible for a crime it is necessary for such person to have sufficient mental understanding to form a criminal intent. Harvey v. State, 207 So.2d 108 (Miss. 1968). The issue before the trial court was not whether the defendant killed Mrs. Glidewell, but whether he had the mental capacity to form a criminal intent at the time. We are aware of the gravity of the offense as well as the misunderstanding of the populace generally on the issues involved. Nevertheless, the substantive right of a defendant to a fair trial outweighs other considerations, as the principle endures while the case terminates and public opinion subsides.
The evidence establishes that about 2:30 p.m. on June 10, 1965, the appellant shot and killed Mrs. Mildred Mae Glidewell without provocation. The facts concerning this fatality are related in Smith v. State, 198 So.2d 220 (Miss. 1967). They are substantially the same as in the present case and will not be repeated except to state that the testimony of the two psychiatrists, who testified in both cases, was strengthened somewhat by virtue of their reexamination of the appellant. Their testimony in this case was consistent with that of the former case in that it was still their opinion that the defendant was suffering from a major psychiatric disorder which they disagnosed as a chronic, undifferentiated type of schizophrenia. It was their opinion that because of this disorder the appellant was not capable of distinguishing right from wrong at the time he killed Mrs. Glidewell. These doctors were of the opinion that by reason of appellant's mental condition he was a menace to society and should be confined to a mental institution.
*315 The appellant first assigns as error the action of the lower court in overruling his motions for a directed verdict at the conclusion of the State's evidence, as well as at the conclusion of all the testimony. During the course of the first Smith trial the State introduced lay testimony to prove the appellant was sane. The appellant introduced both lay and expert medical testimony that he was insane. In considering this testimony we reach the conclusion that our opinion in the first trial is still apropos: "This evidence was sufficient to make a question for the jury to determine whether the State had met the burden of proving beyond a reasonable doubt that appellant could distinguish right from wrong at the time he shot and killed Mrs. Glidewell." 198 So.2d at 222. It is our opinion that this assignment is not well taken.
The appellant assigns as error the granting of the following instruction:
The Court instructs the jury for the State, that in the event you should find the defendant not guilty by reason of insanity and certify that he is dangerous, then it would be the duty of the Court to commit him to the insane asylum until such time as he regained his sanity.
He contends the instruction is erroneous in that it infers that a finding of not guilty by reason of insanity would result in the defendant soon being discharged by the authorities to return to society. The instruction was apparently drawn with Mississippi Code 1942 Annotated, section 2575 (1956) in mind. This section states:
When any person shall be indicted for an offense and acquitted on the ground of insanity the jury rendering the verdict shall state therein such ground and whether the accused have since been restored to his reason, and whether he be dangerous to the community. And if the jury certify that such person is still insane and dangerous the judge shall order him to be conveyed to and confined in one of the State asylums for the insane.
We note that this statute does not designate the duration of confinement. In Gambrell v. State, 238 Miss. 892, 901, 120 So.2d 758, 762 (1960), a similar instruction was condemned by this Court. The instruction is as follows:
The Court instructs the Jury for the State that in the event you should find the defendant not guilty by reason of insanity and certify that he is dangerous, to the community, then it would be the duty of the Court to commit him to the asylum until such time as he regained his sanity at which time he would go free. (Emphasis added.)
In commenting thereon we stated:
The instruction complained of told the jury in effect that a verdict of not guilty on the grounds of insanity would result in freeing the accused. It is very probable that this erroneous instruction was partly responsible for the verdict in this case. 238 Miss. at 902, 120 So.2d at 762.
In addition to the foregoing statement, Gambrell cites with approval the case of Nelson v. State, 129 Miss. 288, 307-308, 92 So. 66, 70 (1922), a case relating to the following instruction:
"The Court instructs the jury that, should you acquit the defendant because of insanity, you may render one of the following verdicts: We, the jury, find that the defendant killed the deceased, but we further find that at the time he so killed the deceased, that he did not know the difference between moral right and wrong, and we further find that he has been restored to his reason and is not dangerous to the community.
"Or you may say: We, the jury, find the defendant guilty of killing the deceased without authority of law, but find further that, at the time, the defendant did not know right from wrong, and that the defendant has not been restored to his reason and is dangerous to the community.

*316 "It will then be the duty of the court to order the defendant confined in the insane asylum for treatment until discharged by the authorities of such institution."
We stated:
The principal criticism is addressed to the last two paragraphs of the instruction, which, in substance, told the jury that, if they acquitted the defendant on the ground of insanity, and found that his reason had not been restored, and he was dangerous to the community, it would then be the duty of the court to order him confined in the insane asylum for treatment, until discharged by the authorities of such institution. It is argued that the jury could infer but one thing from the latter part of this instruction, and that was that, if they acquitted appellant on the ground of insanity, and found that his mind had not been restored at the time of the trial, and that he was dangerous, he would be sent to the insane asylum and there the authorities would soon discharge him, and he would again be a free man. It is sufficient to say that the jury had nothing to do with the result of such a finding, and therefore the instruction should not have been given in that form. * * 129 Miss. at 308, 92 So. at 70-71.
In 1 Alexander, Mississippi Jury Instructions, section 2661 (1953), which was also cited with approval in Gambrell, it is stated:
Since it is no part of the function of the jury to take account of what disposition should be made of the accused if it should find him insane, an instruction undertaken to so inform them is erroneous.
In considering the instruction in the present case we immediately note that its terms are beyond those of the statute, as it includes the words "until such time as he regained his sanity." We point out also that even though it does not contain the words "at which time he would go free," as in Gambrell, the only logical inference that could be drawn from the concluding words of the instruction, "until such time as he regained his sanity," would of necessity signify only temporary confinement. This diverts, we think, the attention of the jury from the real issue in the case, the defendant's sanity or insanity at the time of the shooting, to the serious problem of the protection of society in the event of his discharge.
The present instruction does not contain the word "free" which we condemned in Gambrell, but the inference drawn from "until such time as he regained his sanity" is, in our opinion, equally as strong and therefore equally as erroneous as the former. In this regard we note that the use of "until discharged by the authorities of such institution," which was specifically condemned in Nelson, is particularly analogous to the present instruction. It is the opinion of a majority of the justices that the use of this instruction was error as it permitted the jury to grope with the problem of confinement for the benefit of society when that was not the issue before it.[*]
The next contention of the appellant is that the inflammatory argument of the district attorney constitutes reversible error. In Smith, supra, we referred to improper argument of counsel in these words:
We do not deem it necessary to pass upon the assignment of error relative to the alleged improper argument to the jury by the county attorney, for the reason that this alleged error should not recur on another trial. 198 So.2d at 225.
*317 The Bill of Exceptions in that case reflects the improper argument there to be as follows:
The jury should not find the defendant not guilty for reason of insanity because the court cannot send the defendant to Whitfield for one year or for life, but you should find him guilty as charged, and then the court can sentence him to Parchman for life and the defendant cannot get out of Parchman like he could from Whitfield.
In utter disregard to this Court's pronouncement concerning improper argument the district attorney in his final argument in the present case indulged in the following language over appellant's objection:
* * * And then to have the audacity, the brazen effrontery, to come before the jury of twelve fine citizens and say, "Walk him out. * * * walk him out." Now, gentlemen, if you don't want to walk him out, let him go over here to the insane hospital, and when they announce he is restored to sanity, if it's two years, if it's two months, from that time he will be released upon the public. * * *
By Mr. Prewitt: We object to that, Your honor, and take exception to his remarks.
By Mr. Lawrence:
* * * That's the law.
By the Court: Well, I'll overrule the objection.
* * * Thank you, Judge, thank you. They are worried now. Worried.
By Mr. Prewitt: Now I Object to that, Your honor. I 
By Mr. Lawrence: I didn't call your name.
By the Court: What's 
By Mr. Prewitt: What we are trying to do is represent our client. He said, "We are getting worried." We are merely trying to represent our client.
By the Court: Yes sir, don't characterize counsel's objection to testimony. Just let it stand. Let the Court rule on it.
(Mr. Lawrence resumes argument.)
You heard him gentlemen. Thank you, Judge. You heard him.
We are of the opinion that this argument was completely unnecessary and could only result in prejudice to the defendant. We repeat, the issue before the jury was the defendant's sanity or insanity at the time of the shooting and not what disposition was to be made of him. The improper argument gave emphasis to the erroneous instruction referred to above and logically would operate to give the jury concern over whether the defendant would be placed back in society after a short period of confinement in the asylum. All of the justices except Robertson are of the opinion that the instruction, plus the improper argument, constitutes reversible error.
The appellant next urges that it was error to instruct the jury that it should find the defendant guilty if at the time he had the mental capacity to distinguish moral right and wrong without any consideration of other legal elements of insanity. In support of this argument he quotes at length from an instruction obtained by the State which concludes with the words, "and you further find from the evidence, beyond a reasonable doubt, that at that time the defendant had the mental capacity to distinguish between moral right and wrong, then the defendant is guilty of murder, and the jury should so find." Another instruction states in its latter part the following: "* * * that at the time the defendant had the mental capacity to distinguish between moral right and wrong, then the defendant is guilty of murder and the jury should so find." The objection to such instructions was that they do not include the words "to realize and appreciate the nature *318 and quality thereof or that he was mentally capable of understanding and appreciating the nature of his act." We point out that in Smith v. State, 95 Miss. 786, 788, 49 So. 945 (1909) this Court said:
Where the defense is insanity, total or partial, the test of defendant's criminal responsibility is his ability, at the time he committed the act, to realize and appreciate the nature and quality thereof  his ability to distinguish right and wrong. * * *
We are of the opinion that the cited case states the correct rule for the determination of sanity or insanity at the time of the act. However, we cannot say that the failure to include in these instructions a reference to the appellant's capability to understand and appreciate the nature of his act was in itself reversible error, particularly since there are other instructions which state the correct rule. We find no merit in this assignment.
Appellant finally contends that he has been denied his fundamental right to a speedy trial and has been denied due process of law. Our attention is called to the fact that on June 10, 1965, the appellant shot and killed Mrs. Glidewell and thereafter he was brought to trial on July 19, 1965, at which time a mistrial was declared at the request of the State because of a statement made by a juror. He was subsequently tried on December 9, 1965, and was convicted. This conviction was reversed for erroneous instruction on April 24, 1967. Thereafter, on July 19, 1967, the appellant was again tried and again convicted, resulting in this appeal and its present consideration during February 1969. The point that appellant raises is that final judgment should be entered in this Court by directing the rendition of a judgment of not guilty by reason of insanity on the basis of the defendant's motion at the conclusion of the evidence. He solicits this Court to commit him to the state hospital for the insane or that we declare further trial barred by the constitution and commit him to the state hospital. The basis of the appellant's argument in this regard is that the various trials are the result of manifest unfairness by the State, and therefore this Court must terminate the litigation in order to preclude further harassment of the defendant. The errors heretofore made in the trial of this case and those discussed in this opinion are, of course, regrettable, but we cannot say that the appellant was denied due process as a result thereof.
We sit as an appellate court, removed from the heat and passion generated by adversary proceedings in a trial court. We have every opportunity, in calm deliberation, to review the various rulings made by a trial judge as to the introduction of evidence and objections to argument which must be made with urgency and speed as the course of the trial dictates. We realize that the trial judge does not have the opportunity to study and deliberate upon the correctness or incorrectness of instructions as we do. With these thoughts in mind we decline an opinion that the appellant's troubles are the result of deliberate harassment by the State, but indulge the thought that the errors necessitating the several trials are the result of inadvertence and honest mistake.
From the record there is no indication that the witnesses who have heretofore testified are unavailable for another trial or that prejudice will result to the defendant other than the expense of another trial to which we can only state with charity that the defendant is in no position to complain. We therefore adopt that portion of our former opinion in this case wherein we stated:
The question before us is whether the requirement that the defendant shall be presented for trial before a second jury for the same offense violates due process of law as required of the State under the Fourteenth Amendment. The question has been here before under different circumstances. In Palko v. State of Connecticut, supra [302 U.S. 319, 58 *319 S.Ct. 149, 82 L.Ed. 288], the defendant was first tried for murder in the first degree and was found guilty of murder in the second degree. Pursuant to a statute of Connecticut, the State appealed and obtained a reversal for errors of law at the trial. The defendant was retried, convicted of murder in the first degree, and sentenced to death. An appeal of this Court raised the question whether or not the requirement that he stand trial a second time for the same offense placed him twice in jeopardy, in violation of due process.
This Court held that the State had not denied the defendant due process of law. In order to indicate the nature of due process, this Court asked two questions: "Is that kind of double jeopardy to which the statute has subjected him a hardship so acute and shocking that our polity will not endure it? Does it violate those `fundamental principles of liberty and justice which lie at the base of all our civil and political institutions'? * * * The answer surely must be `no.'" 302 U.S. 319, 328, 58 S.Ct. [149], 153, 82 L.Ed. 288, 293.
Here the answer must be the same. 198 So.2d at 223.
For these reasons this assignment is not persuasive.
The defendant is represented by able counsel who have not chosen to raise the question of their inability to conduct a proper defense due to the defendant's present insanity. We are therefore unable to suggest, as we did in Gambrell, supra, that appropriate steps be taken to determine appellant's condition before retrial under the authority of Mississippi Code 1942 Annotated, section 2575.5 (1956), as to do so would in all probability violate the defendant's Fifth Amendment right not to be a witness against himself.
The case is difficult. By our former opinion to which we adhere we stated that the factual issues were close, but were issues to be resolved by a jury. On retrial we trust that the jury will be aided in its serious task of determining the defendant's sanity or insanity by proper instructions and argument.
Reversed and remanded.
ETHRIDGE, C.J., GILLESPIE, P.J., and RODGERS, JONES, BRADY, INZER and SMITH, JJ., concur.
ROBERTSON, Justice (dissenting).
I am unable to agree with the majority opinion. I think that the errors complained of were harmless errors and that this case fits squarely within the provisions of Rule 11 of this Court, which provides:

"No judgment shall be reversed on the ground of misdirection to the jury, or the improper admission or exclusion of evidence, or for error as to the matter of pleading or procedure, unless it shall affirmatively appear, from the whole record, that such judgment has resulted in a miscarriage of justice." (Emphasis added).
The instruction complained of is in these words:
"The Court instructs the Jury for the State, that in the event you should find the Defendant not guilty by reason of insanity and certify that he is dangerous, then it would be the duty of the Court to commit him to the insane asylum until such time as he regained his sanity." (Emphasis added.)
The only complaint made is that the jury should not have been instructed that defendant would remain in the insane asylum "until such time as he regained his sanity." This instruction is a true statement of the law. I would venture to say that every school child knows this; surely, every adult knows it. I am unable to comprehend how the use of eight surplus words on a matter of common knowledge ipso facto constitutes reversible error.
*320 It is stated that this instruction, considered alongside and in combination with the improper remarks of the district attorney in his closing argument, constitutes fatal error.
In order to reach that conclusion, I think the Court is giving undue emphasis to one or two chance remarks of an overzealous district attorney made in the course of a closing argument that took ten or fifteen minutes to deliver. The jury had already heard fifty minutes of closing argument; they had already heard from the county attorney and the two defense counsel. The improper remarks were a very infinitesimal part of the hour-long argument to a tired jury. After all, it was merely argument, not evidence or testimony. Surely the jury recognized the difference. I dare say that every member of the jury was perfectly cognizant of the fact that in a criminal trial the district attorney prosecutes, and defense counsel defend. They looked upon it as an adversary action, with each attorney doing his duty. Members of the jury were not hanging on each word of the district attorney, nor were they parsing and analyzing each word of a long and tiring argument.
It has been said many times, and I think truthfully, that the ordinary person takes in much more through his eyes than through his ears. In this case, the trial judge approved twelve written instructions for the defendant; ten of these concerned the defense of insanity. Every element of this defense was explained and every facet of this question was explored, and these instructions were handed to the jury to read and study when they retired to the jury room.
Rule 11 provides that no judgment shall be reversed "unless it shall affirmatively appear, from the whole record, that such judgment has resulted in a miscarriage of justice."
Two juries of his peers tried the accused; two juries returned the same verdict. I cannot say that it affirmatively appears, from the whole record, that such judgment has resulted in a miscarriage of justice. I think that the judgment of the trial court, based on a verdict of the jury, should have been affirmed. Therefore, I respectfully dissent.
NOTES
[*] Justices Jones, Smith, and Robertson are of the opinion that the use of this instruction of itself did not constitute prejudicial error, though all justices conclude that had the instruction terminated, as does the statute, "and confined in one of the state asylums for the insane," it would have been proper.