HAND *v.* STATE.

(En Banc.   Feb. 10, 1941.)

[200 So. 258.   No. 34156.]

E. S. Richardson, of Philadelphia, and J. V. Gipson and A. M. Byrd, both of Meridian, for appellant.

**W. D. Conn, Jr.,** Assistant Attorney General, for appellee.

Argued orally by **A. M. Byrd**, for appellant, and by **W. D. Conn, Jr.**, for the State.

**McGehee, J.**, delivered the opinion of the court.

The appellant was tried for the murder of his son, Malcolm Hand, and was convicted of manslaughter and sentenced to serve a term of ten years in the state penitentiary.

It is earnestly urged by the appellant that the trial court committed error in not granting a peremptory instruction to the jury to find him not guilty under his plea of temporary insanity at the time of the homicide. Many other alleged errors are assigned for our consideration if the peremptory instruction was properly refused.

The testimony is somewhat voluminous, and we shall not extend this opinion to such length as would be occasioned by a review of the whole record. It discloses in substance that on the afternoon of Wednesday, July 19, 1939, the appellant attended a political picnic at Lauderdale Springs in behalf of his candidacy for reelection as a member of the State Legislature; that he became intoxicated that afternoon, went to Meridian and spent the night, and was carried to his home by a friend on the next evening while still intoxicated; that he continued drinking during Friday and Saturday; that on Sunday morning he requested his son, Malcolm Hand, to go and get him some more whisky, but that instead

of going for the whisky his son went to Philadelphia, Mississippi, for Dr. R. W. Hand, a brother of the appellant, who came to the home where he found the appellant in a nervous and disturbed condition, both physically and mentally, due to intoxication; and so much so that the Doctor then advised the family that he should be confined; then when the appellant saw his son returning to the home he stated to Dr. Hand that Malcolm was bringing him some more whisky and that he had to have a drink; that thereupon Dr. Hand told him that Malcolm had not brought any whisky and that he could not have any more to drink; that the appellant then acquiesced in the position taken by Dr. Hand, and whereupon he was given a double dose of morphine, a dose of phenobarbital and a supply of seconal to be taken at intervals of every three or four hours; that the appellant remained at his home and acted in an abnormal manner throughout the following day, and when he was requested to retire for the night on Monday evening at about eleven o'clock, his reply to his wife's request was that, "There is no use, I can't sleep." That during the hour immediately following, he entered the bedroom where his son, Malcolm Hand, and his father, H. W. Hand, a man eighty-seven years of age, were sleeping in separate beds; that there was a lamp burning on the table near the door between this bedroom and the sleeping porch where the other members of the family usually slept; that the appellant upon entering the bedroom where his son and father were asleep obtained his father's loaded shotgun from behind a door in that room, and shot his son in the back at such close range as to cause powder burn on the flesh, the load ranging through the region near the heart with deadly effect; that the appellant's father, H. W. Hand, upon being awakened by the sound of the shot, saw the appellant standing in the room with the shotgun in his hand; that within the next few moments the appellant asked his wife, "Did I kill Malcolm?," and that

she replied, "Yes, you have killed him," and that appellant then responded, "My God, why did I do it, and how did I do it?;" that soon thereafter he inquired of one of the neighbors who came in as to whether he had killed Malcolm, and that some of the neighbors saw him kneeling at the bed of his deceased son and showing that he was very much disturbed and upset over what had occurred; that Dr. Hand was again summoned from Philadelphia and advised the appellant that he would have to get ready to go to Meridian, and whereupon he inquired as to why he would have to go to Meridian; that he then got ready and accompanied the officers and was placed in jail where he remained about one week and was then committed to the East Mississippi Insane Asylum by agreement had with the district attorney; that while in the jail he inquired of his wife in the presence of Dr. Hand as to the whereabouts of their son; that after being indicted at the August, 1939, term of the circuit court, the appellant obtained a continuance of the case on the ground that his physical and mental condition was such that he could not conduct a rational defense at that term of court; that he was thereupon allowed to go back to the Insane Asylum under an order of the court which contained a recital to the effect that "it appearing that the attorneys for the defendant and the members of the defendant's family have given their assurance that it is their purpose to put the defendant under proper observation and in proper custody, consistent with his present physical and mental condition," bail in the sum of $7,500 was allowed; that he remained at the Insane Asylum until the following November, when he was released and allowed to return home because he was needed. there, and for the further reason that his condition had sufficiently improved to permit his discharge from that institution; that upon his admission to the Insane Asylum, the superintendent of the institution obtained from Dr. Hand and the appellant's wife a history of his case, and that upon that history and an interview with

the appellant in the presence of the medical staff, which was reduced to writing and introduced in evidence upon the trial, and their observation of him, the several psychiatrists, six in number, made a medical staff finding to the effect that the patient had suffered a complete amnesia from the time that he left the picnic at Lauderdale Springs on Wednesday afternoon until after the tragedy; and they all testified at the trial in effect that he was incapable of knowing the nature and character of his acts during that period, due to the effects of the morphine, phenobarbital, secondal and alcohol. And the testimony of Dr. Hand was to the same effect, no other medical or expert testimony being offered.

The question of sanity or insanity being one of fact for the jury, it will be seen from the foregoing statement of the substance of the evidence that the jurors were entitled to take into consideration the interest of the appellant's brother, Dr. Hand, and that of his wife in giving to the medical staff of the insane hospital the history upon which the testimony of the psychiatrists was mainly predicated; that the personal interview with the appellant which was had in the presence of the medical staff shortly after his admission to the hospital, and which was reduced to writing as aforesaid and introduced in evidence, and upon which the opinions of the psychiatrists were partially based, did not of itself disclose affirmatively that the appellant was incapable of distinguishing between right and wrong at the time of the commission of the alleged crime, since such interview clearly disclosed that he understood their questions and intelligently answered them, even though it also appeared that he was then making the self-serving claim that he did not remember what had occurred from the time he left the picnic on Wednesday until after the tragedy on Monday night; and that some of the psychiatrists also admitted that the attitude of the appellant, as disclosed by their observations of him, was one likely to be produced by the fact that he had taken the life of his son. And the jurors had

before them the further testimony of the neighbors that they observed nothing abnormal about the condition of the appellant on the night of the tragedy other than that he was distressed because of what had occurred; also the fact that he had sufficient presence of mind to know where the shotgun was, and how to aim it with deadly effect toward a vital spot of the body of the victim of his act. They also were entitled to believe, if they saw fit to do so, the testimony of two of the neighbors to the effect that Dr. Hand stated on the night of the killing, notwithstanding that he denied having made such statement, that it was all right for Mrs. Hand to think that Austin was ''doped'' if she could get any consolation out of it, but that he had had too much whisky. Therefore, under all the facts and circumstances disclosed by the record, we are of the opinion that the peremptory instruction was properly refused.

It is next urged that the appellant is entitled to another trial because the circuit judge publicly condemned in open court, as an act of bad faith, the conduct of the appellant and his family in regard to his release from the insane asylum prior to the February, 1940, term of court at which he was to be tried. Without going into the details of the incident, which was carried that day as a feature story in a Meridian newspaper, which had a large circulation in the county, it is sufficient to say that this incident occurred approximately ten days before the trial, and the record does not affirmatively disclose that any of the jurors who later served on the jury at the trial were present in the courtroom at the time the comment was made; nor is it shown by any voir dire examination that those who read the newspaper story were prejudiced against the defendant by reason thereof in their determination of his guilt or innocence of the crime charged.

It is also urged that the trial court was in error in submitting to the jury the issue of whether voluntary intoxication would constitute a defense to the crime, since the testimony discloses without dispute that the appellant

had not drunk any whisky during Sunday and Monday preceding the homicide. We are of the opinion, however, that this contention is without merit for the reason that it was shown that the drugs or medicines were administered because of the condition produced by the voluntary intoxication; that this condition still prevailed at the time the same were prescribed and furnished; and that the giving of these barbituric preparations were deemed necessary because of the condition produced by such intoxication. The instruction did not constitute error in view of the decision and the authorities cited in the case of Melton v. State, 155 Miss. 659, 124 So. 802, since the case of Edwards v. State, 178 Miss. 696, 174 So. 57, would have no application to a crime of the nature and character here involved.

It is next complained that the court was in error in granting a manslaughter instruction over the protest of the appellant. If any error was committed in that behalf, the appellant cannot complain on account thereof for the reason that if the jury believed from the evidence beyond a reasonable doubt that the appellant was sane at the time of the homicide they would have been warranted in convicting him of the higher crime of murder. Calicoat v. State (Strickland v. State), 131 Miss. 169, 95 So. 318.

There is only one other error assigned which we deem of sufficient merit to require discussion, and that is that the trial court admitted testimony in regard to the tendency and disposition of the appellant toward violence or threats of violence when in a state of intoxication. It was held in the case of Smith v. State, 95 Miss. 786, 49 So. 945, 27 L. R. A. (N. S.) 461, Ann. Cas. 1912A, 23, that where, in a prosecution for homicide, defendant's excuse was delusional insanity, evidence concerning his conduct in several fights in which he had been previously engaged with various persons when there was no pretense that he was not sane was relevant, and wherein the court said: "Where the defense is insanity, general or partial, the door is thrown wide open for the admission of evidence;

every act of the party's life is relevant to the issue and admissible in evidence. 1 Wigmore on Evidence, sec. 228, and authorities there cited; State v. Jones, 50 N. H. 369, 9 Am. Rep. 242.'' Thereafter, the court held in the case of Nelson v. State, 129 Miss. 288, 92 So. 66, that it was error for the court to permit the district attorney, on cross-examination of a witness for the defendant, to ask the witness if he had ever bought any intoxicating liquors from the defendant, because that fact, if proved, would be irrelevant to the issue of the guilt or innocence of the defendant charged with murder. However, we are unable to agree that the Nelson case is applicable in the case at bar for the reason that the testimony here objected to in regard to previous threats of violence on the part of the appellant, while in a state of intoxication, would clearly throw light on the appellant's state of mind and proneness to do violence at the time he killed his son, if the jury believed that his act was traceable to a condition produced as a proximate result of intoxication.

After careful consideration of the entire record before us, we are of the opinion that no reversible error was committed by the trial court, and that the judgment and sentence should therefore be affirmed.

Affirmed.